IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST
VIRGINIA
BECKLEY DIVISION

ROBERT RIVERNIDER,

     Petitioner,

v.

WARDEN, FCI BECKLEY
SATELLITE CAMP,

     Respondent.



Civil Action No. 5:26-cv-00459

### PETITIONER'S EMERGENCY, SPECIFIC OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS (ECF NO. 10); MOTION TO MODIFY THE SIXTY-DAY SHOW-CAUSE DEADLINE (ECF NO. 9); AND REQUEST FOR AN IMMEDIATE STATUS CONFERENCE, RECORD PRODUCTION, AND INTERIM PRERELEASE RELIEF

Petitioner Robert Rivernider respectfully submits these specific objections under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), and moves to modify the response schedule established in ECF No. 9. The Proposed Findings and Recommendations ("PF&R") should not be adopted because the central finding—that Petitioner has shown no actual and imminent irreparable harm—rests on an incomplete description of the sentence calculation and on the absence of a Respondent-created record that the Court simultaneously gave Respondent sixty days to produce.

The disputed time is not remote. On the aggregate-sentence calculation pleaded in the Petition, Petitioner has already entered the maximum six-month home-confinement period and has also earned at least thirty days of First Step Act ("FSA") time credits for application toward prerelease custody. Every additional day in institutional custody consumes a form of liberty that no later judgment can restore.

1

**I. Dockets 9 and 10 create an avoidable sixty-day delay in a time-sensitive liberty case.**

ECF No. 9 construes the exhaustion memorandum as a supplement, denies expedited consideration, and orders Respondent to answer or otherwise respond within sixty days and include available records. ECF No. 10 then recommends denial of preliminary relief principally because Respondent has not yet responded and the Court does not yet have Respondent's computation records.

Respectfully, that sequence is circular. The PF&R treats the absence of records controlled by Respondent as a reason to deny relief while the companion order gives Respondent enough time to consume a substantial part of the very prerelease period in dispute. A narrower and more equitable response is immediate production of the computation, an accelerated return, and a prompt status conference.

**II. Section 2243 supplies an independent reason to modify the sixty-day return deadline.**

Docket 9 is expressly an order directing Respondent to answer and "show cause" why the writ should not be granted. Section 2243 provides that a writ or order to show cause "shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed." 28 U.S.C. § 2243. The same statute directs the Court to hear and determine the facts summarily and dispose of the matter as law and justice require.

Docket 9 does not identify good cause for sixty days, does not explain why the statutory twenty-day ceiling should not govern, and does not state that the Court is applying Rule 4 of the Rules Governing Section 2254 Cases to this § 2241 proceeding. Petitioner recognizes that some courts apply Habeas Rule 4 to § 2241 cases and regard it as permitting a more flexible response deadline. Even under that approach, however, the text and urgency of § 2243 remain powerful reasons not to allow an unexplained sixty-day delay where the petitioner demonstrates that the disputed prerelease period is being consumed daily.

Congress separately directed that courts expedite actions brought under Chapter 153, which includes this § 2241 action. 28 U.S.C. § 1657(a). Petitioner therefore requests a return within three days; alternatively, no later than twenty days; or, at the very least, within seven to ten days together with immediate production of the existing sentence-computation documents.

### III. The arithmetic establishes present—not speculative—irreparable harm.

The PF&R states that Petitioner's allegations only "may affect" prerelease custody. The calculations show otherwise. Petitioner's BOP records reflect approximately six years, seven months, and twenty-eight days of prior imprisonment, which the pleadings round to approximately eighty months. He was arrested on the revocation matter on June 24, 2025. As of July 22, 2026, he has served an additional twelve months and twenty-eight days; on July 24, 2026, he will have served thirteen additional months.

Petitioner's claim is that the approximately eighty months previously served and the thirty-six-month revocation imprisonment must be administered as a 116-month aggregate term. Section 3584(c) provides that multiple terms of imprisonment ordered to run concurrently or consecutively are treated for administrative purposes as a single aggregate term. Johnson v. United States, 529 U.S. 694, 700–01 (2000), attributes postrevocation penalties to the original conviction; Mont v. United States, 139 S. Ct. 1826, 1834 (2019), describes supervised release as part of the same sentence; and United States v. Barrus, No. 23-10154, slip op. at 4–5 (11th Cir. Jan. 3, 2024), describes revocation punishment as a modification of the original sentence. Giovinco v. Pullen, 118 F.4th 527, 531–33 (2d Cir. 2024), cert. denied sub nom. Giovinco v. Flowers, 145 S. Ct. 1947 (2025), confirms that BOP sentence-credit administration is an "administrative purpose" to which § 3584(c)'s aggregation command applies.

The resulting calculation is as follows. The "85%" figure is used as a conservative approximation of the statutory good-conduct-time release point; the exact day calculation should be supplied immediately by BOP under 18 U.S.C. § 3624(b).

| Calculation | As of July 22, 2026 | As of July 24, 2026 |
|---|---|---|
| Previously served imprisonment | approximately 80 months | approximately 80 months |
| Current incarceration since June 24, 2025 | 12 months, 28 days | 13 months |
| Total actual imprisonment served | approximately 92 months, 28 days | approximately 93 months |
| Aggregate term asserted | 116 months | 116 months |
| 85% service point (approx.) | 98.6 months (about 98 months, 18 days) | same |
| Time remaining to 85% point | about 5 months, 20 days | about 5 months, 18 days |
| Six-month prerelease window begins | 92.6 months (about 92 months, 18 days) | same |
| Position inside six-month window | about 10 days | about 12 days |
| FSA credits earned since April 15 | 30 days, plus partial next period | 30 days, plus partial next period |
| Combined urgency | about 40 days beyond prerelease threshold | about 42 days beyond prerelease threshold |

The six-month calculation is straightforward. Ten percent of 116 months is 11.6 months. Section 3624(c)(2), however, limits home confinement under that provision to the shorter of ten percent of the term or six months. The applicable maximum is therefore six months. Subtracting six months from the approximate 98.6-month good-conduct-time point places the beginning of the prerelease window at approximately 92.6 months, or about 92 months and 18 days.

Petitioner has already served approximately 92 months and 28 days as of July 22. He therefore entered that window approximately ten days ago. By July 24, he will have served approximately 93 months and will be approximately twelve days inside the window. These calculations do not yet include the additional FSA credits.

## IV. Thirty days of FSA credits independently strengthen the demand for immediate prerelease placement.

Petitioner arrived at FCI Beckley on April 15, 2026, and has been earning FSA credits at the statutory rate of ten days for every thirty days of successful participation. See 18 U.S.C. § 3632(d)(4)(A). Three complete thirty-day periods elapsed by July 14, 2026, producing at least thirty days of earned credits, with additional days accruing toward the next period.

The statute directs that earned credits be applied toward prerelease custody or supervised release when the eligibility requirements are met. 18 U.S.C. § 3632(d)(4)(C). Because the revocation judgment imposed no further supervised release, the practical application sought is

4

prerelease custody. Petitioner asks the Court to direct Respondent to state immediately: (1) the exact number of earned FSA days; (2) Petitioner's PATTERN score and statutory eligibility findings; (3) whether those credits have been applied; and (4) the resulting prerelease date.

Using the presently available thirty days as an additional prerelease measure, Petitioner is approximately forty days beyond the point at which the six-month prerelease period began. The injury is occurring now.

## V. A sixty-day response—and another sixty days for a reply—would largely destroy the requested relief.

Docket 9 permits Respondent to wait until approximately September 19, 2026. By then Petitioner will have served approximately fourteen months and twenty-six days on the revocation custody, for a total approaching ninety-five months before accounting for FSA credits. The order then permits another sixty days for a reply, potentially leaving the case unripe until approximately mid-November.

That schedule would consume roughly four months of the six-month prerelease period before ordinary briefing is complete. A later favorable decision could not recreate the lost days of home confinement, residential reentry placement, family reunification, employment preparation, or community reintegration. Loss of liberty for even a short period is irreparable when the custody is later determined to have been unauthorized or improperly administered.

## VI. The existing record is sufficient to require an accelerated return and interim protection.

The legal dispute is already defined. In the earlier Southern District of Florida proceeding, the Government represented that BOP awarded 170 days of prior-custody credit, treated December 12, 2025 as the commencement date of a new standalone thirty-six-month sentence, and projected 162 days of good-conduct time. The Government also defended BOP's refusal to account for the approximately eighty months previously served.

Thus, Respondent's legal position and the core computation are not unknown. The remaining records are in BOP and DSCC possession and can be produced quickly: the sentence monitoring computation data, jail-credit worksheet, good-conduct-time projection, FSA time-credit assessment, PATTERN records, prerelease referral, and communications explaining why the original imprisonment was excluded.

At minimum, the Court should hold the injunction request in abeyance rather than deny it, require immediate production, and decide the request on an accelerated record. Denial based on Respondent's failure to produce records would place the consequences of that absence on the detained party rather than the agency controlling the evidence.

## VII. The remaining Winter factors favor limited interim relief.

Likelihood of success. The PF&R made no adverse merits determination. The petition presents a statutory issue under §§ 3584(c), 3624, and 3632, supported by Supreme Court authority treating revocation punishment as attributable to the original conviction and appellate authority treating BOP credit administration as an aggregation function.

Irreparable harm. The calculation places Petitioner within the claimed prerelease window now. Each day of delay permanently consumes disputed liberty.

Balance of equities. Respondent can access and produce the calculation immediately. Petitioner cannot recover institutional days that should have been served in prerelease custody. Any legitimate supervision concern can be addressed through ordinary home-confinement conditions, location monitoring, reporting, and restrictions.

Public interest. The public has no interest in continued institutional confinement based on an unlawful or materially incomplete computation. The public interest favors faithful administration of federal statutes, prompt habeas review, and a safe transition to the community.

**VIII. Immediate resolution is practical while Petitioner remains at FCI Beckley.**

This case can be resolved without prolonged litigation. Petitioner is physically within this District at the institution whose Warden is the proper respondent. BOP and DSCC already possess every calculation record. The United States Attorney can consult agency counsel and obtain settlement authority without discovery.

Petitioner requests an immediate telephonic status or settlement conference and proposes the following practical process: (1) BOP produces both its existing calculation and an alternative calculation treating the sentence as a 116-month aggregate; (2) the parties identify the exact good-conduct-time and FSA dates; (3) Respondent transfers Petitioner to home confinement or other prerelease custody while the narrow legal issue is resolved; and (4) the petition is held in abeyance for fourteen days to permit an agreed disposition. Such interim relief would preserve the Court's ability to grant meaningful habeas relief without requiring Respondent to concede the ultimate legal issue.

**IX. Requested relief.**

Petitioner respectfully requests that the Court:

1. Sustain these objections and decline to adopt ECF No. 10;

2. Reconsider or modify ECF No. 9 and require Respondent's return within three days under § 2243, or alternatively within no more than twenty days, and in no event later than seven to ten days absent a particularized finding of good cause;

3. Require production within three business days of all sentence-computation, good-conduct-time, FSA-credit, PATTERN, prerelease, DSCC, and SENTRY records relevant to Petitioner;

4. Convene an immediate telephonic status or settlement conference with BOP/DSCC personnel available;

7

5. Order an immediate alternative calculation based on a 116-month aggregate term and require Respondent to identify the exact projected release and prerelease dates under that calculation;

6. Grant interim transfer to home confinement, residential reentry custody, or other lawful prerelease custody pending the expedited merits determination;

7. Alternatively, hold ECF No. 5 in abeyance and reconsider it immediately upon the accelerated return rather than denying it on the present incomplete record; and

8. Grant such other relief as law and justice require.

Respectfully submitted,

/s/Robert Rivernider

_____

Robert Rivernider, Reg. No. 96006-004
FCI Beckley Satellite Prison Camp
P.O. Box 350
Beaver, West Virginia 25813
Pro se Petitioner
Date: July 23, 2026