# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

FILED
SEP 2 1 2026
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

**ROBERT RIVERNIDER,**

Petitioner,

v. Civil Action No. 5:26-cv-00459

**WARDEN, FCI BECKLEY,**

Respondent.

## EMERGENCY NOTICE OF MATERIAL CHANGE IN MEDICAL AND CUSTODIAL CIRCUMSTANCES, INTERVENING BOP RULEMAKING, AND REQUEST FOR IMMEDIATE STATUS REPORT AND PROTECTIVE RELIEF

Petitioner Robert Rivernider respectfully provides emergency notice of material developments affecting the medical, sentence-computation, prerelease, and irreparable-harm issues already presented to this Court.

Immediately before communication with Petitioner ceased, Petitioner informed his sister that correctional staff had confiscated an unauthorized cellular telephone from his cell and that he thereafter went to Health Services requesting that his heart be checked.

Petitioner's sister has had no direct communication with Petitioner since September 10, 2026. She therefore cannot determine the outcome of that medical request, Petitioner's present housing status, whether restrictions have been imposed upon his authorized communications, or whether his previously approved cardiology consultation and prescribed cardiac care are continuing.

Those newly occurring facts are supported by the attached **Declaration of Petitioner's Sister Pursuant to 28 U.S.C. § 1746 ("Exhibit A")**, which is incorporated herein by reference.

Petitioner does not represent that he has been placed in the Special Housing Unit ("SHU") or that any particular communication restriction has been imposed. Those matters presently remain unknown.

Separately, on August 31, 2026, the Bureau of Prisons published an intervening rulemaking materially affecting when eligible prisoners may begin earning First Step Act Time Credits. That development bears directly upon Petitioner's pending contention that BOP has improperly calculated his sentence, credits, and resulting prerelease eligibility.

Taken together, these circumstances warrant expedited consideration.

## I. PETITIONER'S DOCUMENTED CARDIAC HISTORY AND UNRESOLVED SPECIALIST CARE

As this Court has previously been advised, Petitioner has a serious cardiac history, including a prior heart attack and three-vessel coronary artery bypass surgery while in federal custody.

Petitioner previously informed this Court that his request for an outside cardiology consultation showed as **approved on May 7, 2026**.

On July 23, 2026, after Petitioner again sought information concerning the consultation, Health Services responded that his appointment was "scheduled."

Nevertheless, as reflected in Petitioner's prior submissions, months passed following the May 7 approval without Petitioner receiving the cardiology consultation.

The present medical concern therefore predates the September 10 disciplinary event by months.

## II. SEPTEMBER 10, 2026 EVENTS AND CONTINUING INABILITY TO DETERMINE PETITIONER'S STATUS

On the morning of **September 10, 2026**, at approximately **5:40 a.m.**, correctional staff confiscated an unauthorized cellular telephone from Petitioner's cell. **Ex. A ¶¶ 3–5.**

Petitioner does not ask this Court through this Notice to determine whether that confiscation was proper or to adjudicate any disciplinary charge arising from possession of the telephone.

Immediately following the confiscation, however, Petitioner informed his sister that he went to Health Services and requested that his heart be checked. **Ex. A ¶ 6.**

At the time of that communication, Petitioner did not communicate the outcome of that medical request. **Ex. A ¶ 7.**

As of approximately **10:00 a.m. on September 14, 2026—four days after Petitioner's last direct communication—Petitioner's sister still has had no further direct communication with him. Ex. A ¶ 8.**

Consequently, Petitioner's family still cannot independently determine where Petitioner is presently housed, whether the September 10 cardiac evaluation occurred and what it revealed,

whether his prescribed cardiac treatment remains uninterrupted, whether his long-pending cardiology consultation has occurred or remains pending, or whether restrictions have been imposed upon his authorized communications. **Ex. A ¶¶ 9–15.**

Petitioner does not ask the Court to infer from the absence of communication that he is necessarily in SHU, has been transferred, or has been improperly denied communication privileges.

**The point is precisely the opposite: after four days without direct communication, Petitioner's family does not know. Respondent does.**

That uncertainty has become increasingly consequential because the last medical information Petitioner communicated before contact ceased was that he had gone to Health Services requesting evaluation of his heart.

The Court can resolve that uncertainty without speculation by requiring Respondent to provide a prompt status report.

**III. DISCIPLINARY MATTERS DO NOT ELIMINATE THE MEDICAL ISSUE**

Petitioner acknowledges for purposes of this Notice that the cellular telephone confiscated on September 10 was unauthorized.

This Notice therefore does not ask the Court to authorize possession of that device, excuse any violation of BOP rules, or interfere with a properly conducted disciplinary proceeding.

The medical issue is independent.

Whatever disciplinary process follows, Petitioner's need for medically necessary cardiac evaluation, prescribed medication, and previously approved specialist care continues regardless of his housing status.

Likewise, if Petitioner's ordinary communications have been restricted, his family presently has no independent means to determine whether his cardiac evaluation occurred or whether his medical treatment is continuing.

That uncertainty is particularly significant because Petitioner's serious cardiac condition and delayed cardiology consultation were already before this Court before September 10.

## IV. INTERVENING BOP RULEMAKING MATERIALLY AFFECTS THE PENDING SENTENCE-COMPUTATION DISPUTE

A separate material development has occurred while Petitioner's § 2241 petition remains pending.

On **August 31, 2026**, the Bureau of Prisons published an interim final rule entitled *First Step Act Time Credits—Revisions*, FR Doc. 2026-17752, revising 28 C.F.R. § 523.42(a).

BOP removed the regulatory restriction that had tied the commencement of FSA Time Credit earning to an inmate's arrival or voluntary surrender at the designated BOP facility.

The revised regulation provides:

**"An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences."**

BOP explained in the rulemaking that it was removing the prior restriction to conform its regulation to the proper interpretation of the First Step Act and recent judicial decisions addressing the issue.

That development is directly relevant here.

According to BOP's own sentence computation previously submitted in this matter, BOP treats Petitioner's present 36-month revocation sentence as having commenced on **December 12, 2025**.

Petitioner did not arrive at FCI Beckley until **April 15, 2026**.

The intervening rulemaking therefore confirms that physical arrival at Petitioner's designated BOP institution cannot itself categorically exclude the intervening period from potential FSA Time Credit accrual.

Petitioner does not contend that every day between December 12, 2025 and April 15, 2026 automatically produces an FSA Time Credit. Eligibility and accrual remain dependent upon the requirements of the First Step Act, including successful participation in qualifying evidence-based recidivism reduction programs and productive activities.

But the period cannot be excluded merely because Petitioner had not yet physically arrived at FCI Beckley.

The distinction matters because Petitioner's habeas petition already challenges BOP's calculation of the duration of his custody, credits, and prerelease eligibility.

The new regulation becomes effective September 30, 2026. Nevertheless, BOP's publication of the rule while this habeas action remains pending is a material intervening development bearing upon the computation dispute before the Court.

## V. BOP'S EXISTING PRERELEASE ASSESSMENT MAKES CONTINUED DELAY CONCRETE

The potential consequences are not theoretical.

BOP's **May 29, 2026 FSA Time Credit Assessment** reflects an individualized prerelease review under which BOP recorded:

**SCA Recommended Placement Days (Following 5 Factor Review): 150**

and

**FSA Conditional Placement Days: 150.**

Under BOP's presently disputed standalone 36-month computation, the assessment also reflected a maximum statutory Second Chance Act home-confinement period of 109 days and a recommended home-confinement placement date of **April 29, 2027**.

Petitioner has previously contended that these dates themselves must move earlier if BOP corrects the underlying sentence, prior-custody, good-conduct-time, and FSA Time Credit calculations.

The August 31 rulemaking now independently confirms that BOP is changing the regulatory framework governing when eligible prisoners begin earning FSA Time Credits.

Consequently, continued delay is capable of consuming actual incarceration or prerelease time that cannot later be restored.

That irreparable-harm concern is now compounded by Petitioner's unresolved cardiology referral and the inability of his family to determine his present medical and custodial status.

## VI. RESPONDENT POSSESSES THE INFORMATION NECESSARY TO RESOLVE THE PRESENT UNCERTAINTY

The Court need not resolve every disputed sentence-computation issue to obtain basic information uniquely within Respondent's possession.

Petitioner's family cannot determine what happened when he sought cardiac evaluation on September 10.

**Respondent can.**

Petitioner's family cannot determine Petitioner's present housing assignment.

**Respondent can.**

Petitioner's family cannot determine whether the cardiology consultation approved May 7 has occurred or remains pending.

**Respondent can.**

Petitioner's family cannot determine whether medically necessary cardiac medication and treatment have continued uninterrupted.

**Respondent can.**

And Petitioner's family cannot preserve institutional records concerning the September 10 events and their aftermath.

**Respondent can.**

A prompt status report would impose minimal burden while protecting against potentially irreparable consequences.

**VII. REQUEST FOR IMMEDIATE RELIEF**

Petitioner respectfully requests that the Court direct Respondent, on an expedited basis, to provide a status report addressing:

**A. Current Custodial Status.** Petitioner's present housing and whether he has been transferred to SHU, administrative detention, medical observation, another institution, or another housing assignment;

**B. September 10 Medical Encounter.** Whether Petitioner reported to, requested assistance from, or was evaluated by Health Services on September 10, 2026, and the disposition of that encounter, including any resulting examination, testing, treatment, referral, or medical determination;

**C. Cardiology Consultation.** Whether the outside cardiology consultation approved May 7, 2026 has occurred and, if not, whether it remains pending and what steps are being taken to provide medically necessary specialist evaluation;

**D. Medication and Medical Access.** Whether Petitioner's prescribed cardiac medications and medically necessary cardiac evaluation and treatment remain continuously available irrespective of any disciplinary or housing status;

**E. Authorized Communication and Legal Access.** Whether any restriction presently exists upon Petitioner's authorized communications with family or his reasonable access to materials necessary to prosecute his pending judicial proceedings and, if so, the effective date and anticipated duration of the restriction; and

**F. FSA Time Credit Review.** Whether Respondent/BOP has reviewed or will review Petitioner's FSA Time Credit computation in light of the August 31, 2026 interim final rule revising 28 C.F.R. § 523.42(a), including the period after BOP treats Petitioner's sentence as commencing on December 12, 2025 and before his arrival at FCI Beckley on April 15, 2026.

Petitioner further requests an order directing Respondent to **preserve** all material records concerning the September 10 events and Petitioner's subsequent status, including:

Health Services requests and records; encounter notes; medication records; cardiac testing; cardiology referrals and scheduling records; housing and movement records; incident and disciplinary records; confiscation/property records; available relevant surveillance recordings; records of restrictions upon authorized communications or legal access; and records concerning Petitioner's outstanding cardiology referral.

Petitioner further requests such other relief as the Court determines necessary to ensure continuity of medically necessary cardiac care and to prevent Petitioner's pending habeas claims

from becoming ineffective through continued loss of incarceration or prerelease time while the litigation remains unresolved.

## VIII. REQUEST FOR EXPEDITED CONSIDERATION

Petitioner respectfully requests expedited consideration.

This Notice does not ask the Court to speculate.

Petitioner does not presently assert that he has been placed in SHU.

He does not presently assert that his communications were improperly terminated.

He does not ask the Court through this filing to adjudicate a disciplinary matter arising from possession of an unauthorized cellular telephone.

The established circumstances are sufficient without speculation:

Petitioner has a documented serious cardiac history.

His outside cardiology consultation was approved May 7, 2026.

The consultation remained unresolved months later.

On September 10, 2026, Petitioner informed his sister that he had gone to Health Services requesting evaluation of his heart.

His sister has had no direct communication with him since and therefore cannot determine the outcome of that medical request or his present medical and custodial status.

Meanwhile, BOP has published an intervening rule materially affecting the commencement of FSA Time Credit earning while Petitioner's habeas challenge to BOP's sentence and credit computation remains pending.

And BOP's own prior assessment already reflects a five-factor recommendation for substantial prerelease placement.

Respondent possesses the information necessary to resolve the immediate medical and custodial uncertainties and to identify how the intervening FSA rule affects Petitioner's computation.

For these reasons, Petitioner respectfully requests expedited consideration and the relief identified above.

Respectfully submitted,

ROBERT RIVERNIDER
Petitioner, Pro Se
Reg. No. 96006-004
FCI Beckley Satellite Prison Camp

Date: September 14, 2026

## CERTIFICATE OF SERVICE

I certify that on September 14, 2026, a true and correct copy of the foregoing **Emergency Notice of Material Change in Medical and Custodial Circumstances, Intervening BOP Rulemaking, and Request for Immediate Status Report and Protective Relief**, together with **Exhibit A, Declaration of Petitioner's Sister Pursuant to 28 U.S.C. § 1746**, was placed in the

United States Mail, first-class postage prepaid, addressed to counsel of record for Respondent at the address reflected on the docket in this action.

I further certify that the original was placed in the United States Mail, first-class postage prepaid, addressed to the Clerk of the United States District Court for the Southern District of West Virginia for filing in Civil Action No. 5:26-cv-00459.

Loretta Keller

Adult nonparty mailing the documents

Date: September 14, 2026

**EXHIBIT A**

**DECLARATION OF PETITIONER'S SISTER PURSUANT TO 28 U.S.C. § 1746**

I, Loretta Keller, declare as follows:

1. I am the sister of Petitioner Robert Rivernider. I make this declaration from my personal knowledge concerning my communications with my brother immediately before direct communication with him ceased.
2. I have been assisting my brother from outside the institution with his pending litigation and communications concerning his cases.

3. On September 10, 2026, my brother communicated directly with me concerning events occurring at FCI Beckley.
4. He informed me that at approximately 5:40 a.m. that morning a correctional officer came to his cell and confiscated an unauthorized cellular telephone that had been in his possession.
5. My brother informed me that he had been using the telephone, among other purposes, to assist him with his pending litigation and to access functionality he used in connection with monitoring concerns about his heart.
6. My brother further informed me that following the confiscation he went to Health Services that morning and requested that his heart be checked.
7. At the time of our communication, he did not communicate to me the ultimate outcome of that medical request.
8. As of the date of this declaration, I have had **no further direct communication with my brother since September 10, 2026**.
9. I consequently do not know whether Robert received the requested cardiac evaluation, what the results of any evaluation were, or whether additional testing or treatment was ordered.
10. I also do not presently know whether Robert remains in his previous housing assignment or has been placed in SHU, administrative detention, medical observation, another housing assignment, another institution, or another location.
11. I do not know whether his authorized telephone, electronic-messaging, or other communication privileges have formally been restricted.
12. I am therefore **not representing to the Court that Robert has been placed in SHU or that any particular communication restriction has been imposed.**
13. I can state only that I have had no further direct communication with Robert since September 10 and consequently cannot independently determine his present medical or custodial status or the outcome of the cardiac evaluation he requested.
14. I am aware from my prior communications with Robert that he had been seeking an outside cardiology consultation and that the consultation had been approved months before these events but, according to what Robert had previously communicated to me, had still not occurred.

15. I provide this declaration so that the Court has an accurate account of what Robert communicated directly to me immediately before contact ceased while clearly distinguishing those facts from matters that remain unknown to me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 14, 2026.

Loretta Keller

Sister of Robert Rivernider