**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BECKLEY DIVISION**

**ROBERT RIVERNIDER,**

**Petitioner,**

**v.** **Case No. 5:26-cv-00459**

**WARDEN, FCI BECKLEY,**
**SATELLITE CAMP,**

**Respondent.**

## RESPONSE TO ORDER TO SHOW CAUSE

COMES NOW Respondent, by counsel, Seth Frederick, Assistant United States Attorney for the Southern District of West Virginia, and hereby responds to the Court's Order to show cause issued July 21, 2026, (**ECF No. 9**) and further asks the Court to deny the relief requested in the *Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241* (herein the "Petition") (**ECF No. 1**), *Memorandum of Law in Support of Petition for Writ of Habeas Corpus Under 18 U.S.C. § 2241 Regarding Sentence Computation* (**ECF No. 3**), *Memorandum Regarding Exhaustion of Administrative Remedies* (**ECF No. 4**), *Petitioner's Emergency Supplemental Notice of Authority, Supplement to ECF No. 11, and Renewed Request for Immediate Recalculation, Release or Prerelease Relief* (**ECF No. 13**), and *Petitioner's Supplemental Notice of Binding Fourth Circuit Authority – Benson v. Warden FCI Edgefield* (**ECF No. 14**).[1]

[1] Petitioner also filed *Petitioner's Emergency, Specific Objections to the Proposed Findings and Recommendations (ECF No. 10); Motion to Modify the Sixty-Day Show-Cause Deadline (ECF No. 9); and Request for an Immediate Status Conference, Record Production, and Interim Prerelease Relief* (**ECF No. 11**), *Petitioner's Emergency Motion for Prompt District-Court Action, to Expedite the Return and Decision, and for Leave to Supplement the Record* (**ECF No. 15**), and *Petitioner's Renewed Emergency Motion for Immediate District-Judge Action, Expedited Hearing, and Alternative Time-Limited Re-Referral* (**ECF No. 16**). However, Petitioner simply reasserts in these filings many of the same arguments already presented in his numerous other filings to the Court.

## I. STATEMENT OF THE CASE

Robert Rivernider ("Petitioner"), Federal Register Number 96006-004, is an inmate currently designated by the Federal Bureau of Prisons ("BOP") to serve his federal sentence at Federal Correctional Institution ("FCI") Beckley, West Virginia. *See* Respondent's Exhibit 1, Declaration of Misty Shaw, Attach. A, Inmate History Adm-Rel.

Petitioner filed this action pursuant to 28 U.S.C. § 2241, arguing that the BOP has incorrectly computed his federal sentence. *See* ECF Nos. 1, 3. Specifically, Petitioner contends that his 36-month revocation sentence should be aggregated with his 144-month original sentence (modified to 80 months) for purposes of calculating good-conduct time ("GCT").[2] [3] *See* ECF No. 1, pg. 6; ECF No. 3, pgs. 1-2. Further, Petitioner contends that the First Step Act ("FSA") time credits he should have earned while serving his original sentence, and while in transit and awaiting designation following his supervised release revocation, were never calculated or applied and

---

Respondent asks the Court to deny any and all relief requested by Petitioner in this action for the reasons stated herein.

[2] Petitioner also alleges that the BOP is "relying on a parole regulation that does not govern [supervised release] sentences." ECF No. 1, pg. 6. That is simply not the case. Petitioner's revocation sentence was computed as an independent term of imprisonment pursuant to 18 U.S.C. §§ 3583(e)(3), (h). *See* Ex. 2, ¶ 15.

[3] Petitioner also essentially makes a request for discovery, asking the Court to order the BOP to produce various documents regarding his sentence computation, FSA time credits calculation, and prerelease custody placement referrals. *See* ECF No. 15, pg. 9; ECF No. 16, pg. 6. Petitioner's requests for discovery are improper at this stage of the proceeding. The Court has broad discretion to limit the extent of discovery and to stay discovery until preliminary questions that might dispose of the case are decided. *See* Fed. R. Civ. P. 26(b)(2)(C)(i), (iii); *Ashcroft v. Iqbal*, 556 U.S. 662, 684-686 (2009); *Chaudhry v. Mobil Oil Corp*., 186 F.3d 502, 505 (4th Cir. 1999); *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). Additionally, Rule 26(a)(1)(B)(iv) exempts from the initial disclosure requirement imposed by Rule 26(a)(1) actions "brought without an attorney by a person in custody of the United States, a state, or a state subdivision …." Fed. R. Civ. P. 26(a)(1)(B)(iv). Because Plaintiff is proceeding *pro se*, the parties have not made initial disclosures under Rule 26(a)(1), nor has there been a Rule 26(f) meeting. For these reasons, discovery is premature at this time, and Plaintiff's requests for discovery should be denied by the Court.

therefore should be calculated and applied towards his current revocation sentence.[4] ECF No. 13, pg. 2.

However, Petitioner's requests for relief should be denied because (1) Petitioner failed to exhaust his administrative remedies prior to filing this habeas action; (2) Petitioner's 36-month revocation sentence is an independent term of imprisonment and cannot be aggregated with his original sentence for purposes of calculating GCT; (3) *Benson v. Warden FCI Edgefield* is inapposite to this case and Petitioner has already received all FSA time credits to which he is entitled; (4) the BOP's calculation of FSA time credits is discretionary and not reviewable; and (5) Petitioner does not have a protected liberty interest in FSA time credits or prerelease custody placement.

## II. STATEMENT OF FACTS

On November 4, 2010, Petitioner was indicted and a federal arrest warrant was issued by the United States District Court for the District of Connecticut in Case No. 3:10-CR-00222.[5] *See* Respondent's Exhibit 2, Declaration of Athena Jones-Bonner, Attach. A, Indictment.

[4] Petitioner also references the BOP's five-factor review regarding his eligibility for Second Chance Act ("SCA") credits and the recommended placement range of 151-180 days. *See* ECF No. 13, pgs. 4-6. Although Petitioner does not appear to contest the five-factor review or the recommended placement date range, insofar that he intended to do so, inmates are not entitled to a recalculation of their SCA credits or placement date. *See Nehrenz v. Hendrix*, 2018 WL 5726198, at *5 (N.D. W. Va. Nov. 1, 2018) (recognizing that it is not the court's role to "second guess or order the reevaluation of previous evaluations that were properly conducted according to the requirements of the Second Chance Act"); *see also Garrison v. Stansberry*, 2009 WL 1160115, at *5 (E.D. Va. Apr. 29, 2009) ("the Court lacks the authority to direct the BOP to consider specific characteristics for each prisoner who is reviewed for [Residential Reentry Center] placement; the Court is limited to asking whether the BOP used the five factors and cannot engage in a review of the substantive merits or thoroughness of the BOP's analysis."); *Mueses v. Terrell*, 2010 WL 4365520, at *4 (E.D.N.Y. Oct. 27, 2010) ("As the Unit Team's recommendation considered the mandated statutory factors listed in 18 U.S.C. § 3621(b), the Court may not disturb the recommendation, especially in light of the broad discretion the BOP was given by Congress.").

[5] To the extent this and other information is contained in Petitioner's Presentence Investigation Report (PSR), pursuant to BOP Program Statement 1351.05, *Release of Information*, inmates may

On November 5, 2010, the Federal Bureau of Investigations ("FBI") executed a warrant for the Petitioner's arrest in Case No. 3:10-CR-00222. *See id*., Attach. B, Arrest Warrant (Case No. 3:10-CR-00222).

On March 18, 2011, Petitioner was released on bond in Case No. 3:10-CR-00222. *See id*., Attach. C, Appearance Bond.

On December 18, 2013, the Petitioner was sentenced in the United States District Court for the District of Connecticut to a 144-month term of imprisonment for Conspiracy to Commit Wire Fraud and Wire Fraud in Case No. 3:10-CR-00222. *See id*., Attach. D, Judgment. The Court further ordered Petitioner to serve a term of three years supervised release on Counts 1-8 and 10-13, and a term of five years supervised release on Counts 9 and 14-18, all terms to run concurrently. *See id*., pg. 2.

On January 29, 2014, Petitioner surrendered to BOP custody at FCI Jesup, Georgia, for service of his 144-month federal term of imprisonment. *See* Ex. 1, Attach. A; Ex. 2, Attach. E, USM 129 Individual Custody/Detention Report.

On May 12, 2020, the United States District Court for the District of Connecticut granted Petitioner's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a) in Case No. 3:10-CR-00222. *See* Ex. 2, Attach. F, Order Granting Motion for Compassionate Release. As a condition of release, the Court ordered Petitioner to spend the first six months of his supervised release on home confinement as a substitute for incarceration. *See id*., pg. 3.

---

not possess copies of their PSR (available at https://www.bop.gov/policy/progstat/1351_005_CN-2.pdf) (last visited Sept. 9, 2026). Accordingly, a copy of the PSR is not attached to Respondent's Exhibit 2. However, Petitioner can review his PSR by making a request to his unit team in accordance with the procedures set forth in the program statement. *See* Ex. 2, ¶ 16.

On May 13, 2020, the United States District Court for the District of Connecticut entered a Second Order Regarding Compassionate Release, thereby modifying its first order and reducing Petitioner's sentence to time served in Case No. 3:10-CR-00222. *See id*., Attach. G, Second Order Regarding Compassionate Release.

On November 22, 2024, a Transfer of Jurisdiction was filed the United States District Court for the Middle District of Florida to assume oversight of the Petitioner's supervised release obligations from the United States District Court for the District of Connecticut in Case No. 3:10-CR-00222. (Receiving Court Case No. 5:24-CR-00138). *See id*., Attach. H, Transfer of Jurisdiction.

On January 14, 2025, a petition was filed in the United States District Court for the Middle District of Florida charging Petitioner with violating the conditions of his supervised release in Case No. 5:24-CR-00138. *See id*., Attach. I, Superseding Petition for Offender Under Supervised Release.

On June 25, 2025, the United States Marshals' Service executed a warrant for the Petitioner's arrest in connection with the supervised release violation petition filed in Case No. 5:24-CR-00138. *See id*., Attach. J, Arrest Warrant (Case No. 5:24-CR-00138).

On December 12, 2025, Petitioner was sentenced in the United States District Court for the Middle District of Florida to a 36-month term of imprisonment for a violation of his supervised release conditions in Case No. 5:24-CR-00138. *See id*., Attach. K, Judgment in a Criminal Case.

The BOP prepared a federal sentence computation on Case No. 5:24-CR-00138 based on the 36-month term of imprisonment commencing on December 12, 2025, the date the sentence was imposed. *See id*., ¶ 15. Petitioner's revocation sentence was computed as an independent term of imprisonment pursuant to 18 U.S.C. §§ 3583(e)(3), (h). *See id*., Attach. L, BOP Program Statement

5880.28, pgs. 1 – 68, 1 – 69.[6] The BOP credited Petitioner with 171 days of prior custody credit against the revocation sentence—from June 25, 2025 (the date of his arrest), through December 12, 2025 (the date his revocation sentence was imposed)—as Petitioner was in federal custody during this period of time awaiting sentencing and this time has not been credited against another sentence. *See id*., Attach. M, Public Information Inmate Data. Additionally, Petitioner is projected to earn 162 days of GCT resulting in a projected release date of January 13, 2028, via GCT release. *See id*.

## III. ARGUMENT

### 1. Petitioner did not exhaust his administrative remedies prior to filing this habeas action.

Petitioner must first exhaust his administrative remedies concerning his federal sentence computation and FSA time credit calculation before this habeas action should be entertained. *See McClung v. Shearin*, 90 Fed. Appx. 444 (4th Cir. 2004) ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions."); *United States v. Odiana*, 7 F.3d 227 (4th Cir. 1993) (administrative exhaustion required prior to filing § 2241); *United States v. Mercado*, 37 Fed. Appx. 698 (4th Cir. 2002) (dismissal for failure to exhaust BOP's administrative remedies prior to filing § 2241).

While the requirement of exhaustion in § 2241 petitions is judicially imposed and courts retain discretion to waive the requirement when exhaustion is futile, *see Reeder v. Phillips*, 2008 WL 2434003, at *3 (N.D. W. Va. June 12, 2008), unless the agency is certain to rule adversely, failure to exhaust is not excused. *See id.*; *see also Woltz v. Ziegler*, 2012 WL 1599916, at *3 (S.D. W. Va. Mar. 23, 2012), *report and recommendation adopted*, 2012 WL 1599894 (S.D. W. Va.

[6] BOP Program Statement 5880.28, *Sentence Computation Manual (CCCA of 1984)*, can be viewed in its entirety at https://www.bop.gov/policy/progstat/5880_028.pdf (last visited Sept. 9, 2026).

May 7, 2012) (internal citations omitted) ("Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking habeas review under Section 2241.").

Failure to exhaust administrative remedies is excusable only upon a showing that administrative remedies are unavailable. *See Ross v. Blake*, 578 U.S. 632, 642 (2016). "The Supreme Court stated in *Ross* that an administrative remedy is available if it is 'capable of use' to obtain 'some relief for the action complained of.'" *Greene v. Lau*, 2019 WL 4643945, at *4 (D. Md. Sept. 24, 2019) (quoting *Ross*, 578 U.S. at 642). The *Ross* Court stated that an administrative remedy is unavailable when the remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. And the Court then explained that "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," *i.e.*, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44. The Fourth Circuit has added that an administrative remedy is unavailable "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

"Allowing a petitioner to avoid the administrative process based on a mere conclusory assertion 'would allow the futility exception to swallow the exhaustion.'" *Willis v. Warden*, 2010 WL 1137570, at *1 (D. Md. Mar. 19, 2010); *see also Reeder*, 2008 WL 2434003, at *3 (citing *Thetford Prop. IV Ltd. P'ship v. U.S. Dep't of Hous. & Urban Dev.*, 907 F.2d 445, 450 (4th Cir, 1990)). "To excuse a failure to exhaust remedies, a Petitioner must demonstrate cause and prejudice." *Brewer v. Earwin*, 2023 WL 1109662, at *8 (D. Md. Jan. 30, 2023) (rejecting inmate's futility claim because inmate failed to explain what efforts he made to exhaust, why or how he was not able to do so, or other factual information to support his conclusory claim).

The BOP has established a four-tiered administrative remedy process. Title 28 C.F.R. § 542.10, *et seq*., sets forth the BOP's administrative remedy program, which provides formal review of any complaint that relates to any aspect of the inmate's confinement. Under this process, inmates are encouraged to first attempt resolution of their complaints informally by discussing the matter with a member of the unit team (BP-8). *See* 28 C.F.R. § 542.13(a). If the attempt at informal resolution does not resolve the matter, the inmate may file a formal complaint with the warden within twenty (20) days of the date on which the basis of the complaint occurred (BP-9). *See* 28 C.F.R. § 542.14. If an inmate is not satisfied with the warden's response, he may appeal to the Regional Director within twenty (20) calendar days of the warden's response (BP-10). *See* 28 C.F.R. § 542.15. If the inmate is dissatisfied with the regional response, he may file an appeal with the National Appeals Administrator at BOP's Central Office in Washington, D.C. (BP-11). *See id.* The Central Office appeal is the final level of administrative review in the BOP's administrative remedy process. An inmate is only deemed to have exhausted his administrative remedies when he has filed a complaint at all levels and received a final decision from Central Office. *See* Ex. 1, ¶ 4.

A review of Petitioner's administrative remedy history reveals he has filed two administrative remedies at the institutional level following his supervised release revocation, one regarding his FSA time credit calculation (Remedy ID #1287843-F1) and one regarding his sentence computation (Remedy ID #1288031-F1). *See id.*, Attach. B, Administrative Remedy Generalized Retrieval. Petitioner's administrative remedy history reveals he did not submit any appeals to the region or Central Office regarding these remedies. *See id*. And, in fact, Petitioner does not deny that he failed to exhaust his administrative remedies, but rather contends that

exhaustion would be futile because "the Bureau of Prisons has already adopted the sentence-computation position challenged in this Petition" and "[f]urther administrative review would not materially assist this Court." ECF No. 4. That is not the case.

Administrative exhaustion serves a number of purposes outside of granting relief. Namely, exhaustion in this case would allow the development of a factual record to aid the Court. For example, review by the region or Central Office would provide additional clarification regarding Petitioner's GCT calculation, projected release date calculation, FSA time credit assessment, PATTERN score, and prerelease custody placement eligibility, the exact relief Petitioner is now asking the Court to direct the BOP to provide in this habeas action. *See* ECF No. 3, pg. 5; ECF No. 13, pg. 7.

Additionally, if there was a miscalculation of Petitioner's GCT or FSA time credits, or a mis-determination of his PATTERN score or prerelease custody placement eligibility, these errors could have been discovered and remedied at the regional or Central Office levels. Instead, Petitioner elected to not file any administrative appeals and filed this habeas petition asking the Court to direct the BOP to provide the very relief he could have sought by filing administrative appeals. Petitioner does not allege that the administrative remedy program was unavailable to him but rather that "[f]urther administrative review would not materially assist this Court." ECF No. 4, pg. 2. Petitioner's conclusory and unsupported assertions are the exact type of non-specific allegations that should not be allowed to swallow the exhaustion requirement. *See Willis*, 2010 WL 1137570, at *1.

As such, because Petitioner did not exhaust his administrative remedies prior to bringing this habeas action, his request for relief should be denied.

**2. Petitioner's 36-month revocation sentence is an independent term of imprisonment and cannot be aggregated with his original sentence for purposes of calculating GCT.**

The crux of Petitioner's argument appears to be the following: that three-year term of imprisonment imposed pursuant to his supervised release revocation is merely a modification of the original 144-month sentence (modified to 80 months), that both sentences should be aggregated for a total sentence of 116 months, and that all GCT Petitioner has earned for this full aggregate term of imprisonment should be applied towards release or prerelease custody placement. *See generally*, ECF Nos. 1, 3. However, Petitioner's argument is misguided.

Under 18 U.S.C. § 3583(e)(3), Modification of Conditions ***or*** Revocation (emphasis added), "[t]he court may… revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision …."

Further, 18 U.S.C. § 3583(h), provides for the imposition of supervised release following a revocation and states, "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment."

Thus, Section 3583 clearly illustrates that the imposition of a term of imprisonment pursuant to a supervised release revocation is a new, independent sentence, not a modification of the original sentence. And, in fact, courts have addressed this very issue and held that "a revocation sentence is separate and distinct from the original underlying sentence for purposes of calculating good-conduct time." *Kieffer v. Rios*, 2019 WL 3986260, at *1 (D. Minn. Aug. 23, 2019) (unpublished); *see also Malloy v. Leu*, 2025 WL 2270120, at *2 (E. D. Va. July 15, 2025), *report*

*and recommendation adopted*, 2025 WL 2432605 (Aug. 22, 2025) (slip copy) (dismissing the petition as being based solely on the "widely rejected argument" that good time credit earned on an already completed term in BOP custody should be recalculated and applied to an existing revocation sentence); *Buchanan v. Hemingway*, 2022 WL 2119537, at *3 (E.D. Mich. June 13, 2022) (unpublished) (collecting cases); *Himmelreich v. Thompson*, 2024 WL 913207, at *4 (D.N.J. Mar. 4, 2024) (unpublished) (collecting cases) ("It appears that every court to have considered whether federal prisoners who are serving terms of imprisonment of less than one year, imposed upon revocation of supervised release under 18 U.S.C. § 3583(h), have held the relevant term of imprisonment for purposes of good conduct credit is that imposed upon revocation of supervised release, not the original sentence."); *Dandridge v. United States*, 2023 WL 4137470, at *1 (E.D. Va. June 22, 2023) (unpublished) (denying motion requesting "extra" good time credits inmate alleged he should have earned on underlying sentence be applied to supervised release sentence); *Racine v. Fed. Bureau of Prisons*, 2007 WL 1585154, at *5 (D.N.J. May 31, 2007) (unpublished) ("[T]his Court finds no merit to Racine's contention that his sentence on violating supervised release is a continuation of and part of his original custodial term on his underlying drug conviction. While supervised release is imposed as part of the original sentence, any incarceration ensuing from the revocation of supervised release is generally based on new conduct, and 'is wholly derived from a different source, and has different objectives altogether; it is therefore a different beast.'" (quoting *United States v. McNeil*, 415 F.3d 273, 277 (2nd Cir. 2005)); *Stelluto v. Wendt*, 2005 WL 3277661, at *3 (N.D. W. Va. Nov. 30, 2005) (unpublished) (declining to aggregate petitioner's initial sentence and revocation sentence for purposes of calculating good-conduct time); *Schmitz v. Scibana*, 2004 WL 1563302, at *1 (unpublished) (W.D. Wis. July 9, 2004) ("[P]etitioner has already completed the 60-month sentence and is now serving a new one. He points to no authority

that would allow this court to either treat the two sentences as one or order the bureau to remedy a past erroneous calculation by making up the difference on a new sentence.").

Thus, the BOP has correctly calculated Petitioner's revocation sentence as commencing on December 12, 2025, the date the sentence was imposed. *See United States v. McLean*, 1989 WL 5457 (4th Cir. Jan. 13, 1989) (unpublished) (per curiam) ("A federal sentence cannot commence prior to the date it is pronounced."); *see also* 18 U.S.C. § 3585(a). Further, the BOP has appropriately credited Petitioner with 171 days of prior custody credit against his current revocation sentence—from June 25, 2025 (the date of his arrest), through December 12, 2025 (the date his revocation sentence was imposed)—as Petitioner was in federal custody during this period of time awaiting sentencing and this time has not been credited against another sentence. *See* 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences … that has not been credited against another sentence.").

Moreover, the BOP has appropriately not aggregated Petitioner's original 144-month sentence (modified to 80 months) with his 36-month revocation sentence for purposes of calculating GCT and has appropriately not credited Petitioner with GCT he may have earned on his original sentence against his new, independent revocation sentence, as illustrated by the numerous decisions cited above.

As such, Petitioner's federal sentence is accurately calculated and his request for relief should be denied.

**3. *Benson v. Warden FCI Edgefield* is inapposite to this case and Petitioner has already received all FSA time credits to which he is entitled.**

In addition to his argument regarding the earning and application of GCT, Petitioner also contends that he is entitled to additional FSA time credits. First, Petitioner argues that his earned

time credits from December 21, 2018, through May 14, 2020, "were never calculated or applied" to his original sentence and they "cannot simply disappear from the execution of the same federal sentence." ECF No. 13, pg. 2. However, as noted in the previous section, Petitioner's revocation sentence is not the "same federal sentence." *Id*. It is separate and distinct from the original underlying sentence and any FSA time credits he may have earned on the already completed BOP term of imprisonment cannot be applied to his existing revocation sentence.

Second, Petitioner argues that he did not begin earning FSA time credits until he arrived at his designated institution, FCI Beckley, on April 15, 2026. *See* ECF No. 13, pg. 7; ECF No. 14. However, Petitioner alleges that he should have started earning FSA time credits on "June 24, 2025, or, if that date is rejected, [on] December 12, 2025," ECF No. 13, pg. 7, because he was "in official detention awaiting transportation and designation." ECF No. 14, pg. 2. In support of this argument, Petitioner cites *Benson v. Warden FCI Edgefield*, 2026 WL 1084444 (4th Cir. Apr. 22, 2026). However, *Benson* is inapposite to this case, and Petitioner has already received all FSA time credits to which he is entitled.

The First Step Act of 2018, signed into law on December 21, 2018, includes a provision for Evidence Based Recidivism Reduction ("EBRR") program incentives and Productive Activities ("PAs") rewards. *See* Pub. L. 115-391; 18 U.S.C. § 3632(d). Under this program, prisoners may earn various incentives and rewards for their successful participation in and completion of certain programs and productive activities that are assigned to them by BOP staff. *See* 18 U.S.C. § 3632(b) and (d). One such incentive is the award of time credits.

Codified at 18 U.S.C. § 3632(d)(4), time credits are explained as follows:

> (4) Time credits.-
>
> (A) In general. - A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-

based recidivism reduction programming or productive activities, shall earn time credits as follows:

(i) A prisoner shall earn 10 days of time credits for every 30 days of **successful participation in evidence-based recidivism reduction programming or productive activities**.

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of **successful participation in evidence-based recidivism reduction programming or productive activities**.

(B) Availability. – A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed–

(i) prior to the date of enactment of this subchapter; or

(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

(C) Application of time credits toward prerelease custody or supervised release. – Time credits earned under this paragraph by **prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release**. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

18 U.S.C. § 3632(d)(4) (emphasis added).

The BOP has issued regulations implementing the FSA, and these regulations, as expressed in 28 C.F.R. §§ 523 & 541, were subject to the notice and comment provisions of the Administrative Procedure Act. *See* 28 C.F.R. § 523.40-44; *see also* 87 Fed Reg. 2705-2718. On January 19, 2022, the BOP published its "procedures regarding the earning and application of Time

Credits as authorized by the First Step Act of 2018." These federal regulations further defined "successful participation" in EBRR and PA:

> (2) "Successful participation" requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA.

28 C.F.R. § 523.41.

This issue was addressed in *White v. Warden of Fed. Corr. Inst. - Cumberland*, 164 F.4th 326 (4th Cir. 2026), where the Fourth Circuit held:

> At bottom, because White did not participate in programming while at Federal Transfer Center Oklahoma City, he cannot claim that, under the FSA, he earned time credits for a period during which he did not participate in programming. That conclusion flows straight from the FSA, which is not ambiguous in this regard. The Act provides that "a prisoner ... who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits" "for every 30 days of successful participating" in such programming or productive activities. 18 U.S.C. § 3632(d)(4)(A). White has not satisfied those statutory requirements and therefore is not entitled to the credits for the three days he spent at the Federal Transfer Center.

*White*, 164 F.4th at 332.

Here, Petitioner's situation is essentially the same. In his numerous filings, Petitioner fails to even allege whether he actually participated in EBRRs or PAs prior to his arrival at FCI Beckley. *See, e.g.,* ECF No. 14, pg. 2. Instead, Petitioner simply argues that he was "in official detention awaiting transportation and designation," and suggests the determination of "whether qualifying participation occurred … should be determined from the underlying records." *Id*. Well, according to BOP records, Petitioner began programming on May 15, 2026, after his arrival and designation at FCI Beckley. *See* Ex. 1, Attach. C, Inmate Education Data Transcript. Petitioner's transcript

does not reflect that he participated in, or completed, any programming following his arrest on June 24, 2025, or following the imposition of his sentence on December 12, 2025, until he arrived at FCI Beckley on April 15, 2026, and began programming on May 15, 2026. *See id*. Further, BOP records reflect Petitioner has been earning FSA time credits since the date of his arrival at FCI Beckley on April 15, 2026, approximately one month *before* he started programming. *See id*., Attach. D, FSA Time Credit Assessment.

As noted above, this case is distinguishable from the Fourth Circuit's ruling in *Benson.* Benson, a federal inmate who was in transit for nearly 15 months prior to arriving at his designated institution, sought recognition of approximately 150 days of FSA time credits he allegedly earned while in transit. *See Benson*, 2026 WL 1084444, at *2. The district court found no evidence in the record that Benson "successfully participated" in any FSA programs before his arrival at his designated institution. *See id*. "[C]onsistent with the BOP's regulation defining 'successful participation' as being linked to the completion of a prior risk and needs assessment, the district court held that Benson could not have earned FSA credits before his assessment," which he received upon arriving at his designated institution. *See id*.

The Fourth Circuit noted that "the magistrate judge recommended dismissing [Benson's] petition based on his failure to allege adequate participation," to which Benson objected, citing testimony in his court transcripts that he had completed at least 20 programs on his own. *See id*. at *5. The Fourth Circuit found that the district court's opinion did not engage with, or rely on, this argument, and dismissed Benson's petition "because he did not successfully participate in FSA programs as defined in the BOP's regulations—not that he failed to plead participation altogether." *Id*. As such, the Fourth Circuit found that the record was "critically under-developed on the issue

of whether Benson actually participated in FSA programs prior to arriving at his designated institution." *See id*. at *5.

In *Benson*, however, the lower court did not address whether the Petitioner had properly pled successful participation and did not permit discovery on the issue or require a response from the Government regarding the extent of the petitioner's participation. Consequently, the Fourth Circuit held, "Benson's successful participation for FSA purposes is the issue here and that has yet to be resolved. As explained above, the factual record is in far too nascent a stage to dismiss on the ground that Benson did not, in fact, participate in FSA programs during his time at Wyatt. Thus, the Court's holding that White's failure to actually participate in FSA programs meant he was not entitled to FSA credits does not control this appeal." *Id*. at *7.

That is not the issue here. Petitioner does not allege that he participated in programming while he was in transit and awaiting designation, whether starting June 24, 2025, or December 12, 2025. And, BOP records reflect that, after his arrival at FCI Beckley on April 15, 2026, Petitioner began programming on May 15, 2026. The issue here, just as in *White*, is not "successful participation," but no participation at all. Therefore, there is no *Loper* analysis required.[7] The records reflect that Petitioner did not participate in EBRR programs or PAs during the time frame at issue, and he is, therefore, not entitled to additional FSA time credits for that time.

**4. The BOP's calculation of FSA time credits is discretionary and not reviewable.**

While Petitioner seeks a recalculation of his FSA time credits, *see generally* ECF Nos. 13, 14, the BOP's calculation of an inmate's time credits is not reviewable. *See Welch v. Heckard*, 2023 WL 6885005, at *4 (S.D. W. Va. Sept. 19, 2023), *report and recommendation adopted*, 2023

[7] Petitioner superficially references the decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) regarding the level of deference afforded to the BOP's interpretation of "successful participation." *See* ECF No. 14, pg. 1.

WL 6882684 (S.D. W. Va. Oct. 18, 2023); *Mars v. Heisner*, 2023 WL 4977335, at *5 (D. Ariz., June 26, 2023), *report and recommendation adopted*, 2023 WL 4960411 (D. Ariz., Aug. 3, 2023) (explaining that, because the judicial review provisions of the Administrative Procedure Act do not apply to decisions made pursuant to 18 U.S.C. § 3624, courts may not review a BOP decision declining to apply earned time credits towards prerelease custody, unless the decision is contrary to established federal law, violates the Constitution, or exceeds the BOP's statutory authority); *Walker v. Fikes*, 2023 WL 4004123, at *2 (S.D. Ga., May 16, 2023), *report and recommendation adopted*, 2023 WL 3997068 (S.D. Ga., June 14, 2023) (stating that decisions made by the BOP pursuant to 18 U.S.C. § 3624(g) are not subject to judicial review unless those decisions were outside its statutory authority); *Morales v. Brewer*, 2023 WL 3626315, at *2 (E.D. Cal., May 24, 2023), *report and recommendation adopted*, 2023 WL4535042 (E.D. Cal., July 13, 2023) ("The discretionary decision whether to release a prisoner into prerelease custody or supervised release under § 3624(g) is therefore not reviewable by this court."); *Roberts v. Cox*, 2022 WL 742489, at *2 (D.S.D., Mar. 11, 2022), *appeal dismissed*, 2022 WL 4239573 (8th Cir., May 9, 2022) ("Rulemaking decisions by [the BOP] are subject to judicial review, but adjudicative decisions in a specific case are not subject to judicial review.").

Accordingly, Petitioner's FSA time credits calculation is not reviewable, and thus, the relief he requests is not available.

**5. Petitioner does not have a protected liberty interest in FSA time credits or prerelease custody placement.**

The Fifth Amendment provides, in relevant part, that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. Amend V. To show that a party has been deprived of a protected liberty interest in violation of the Fifth Amendment, the party must, "(1) identify a protected liberty ... interest and (2) demonstrate deprivation of that interest

without due process of law." *Cartagena v. Lovell*, 103 F.4th 171, 182 (4th Cir. 2024) (quoting *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Here, Petitioner does not have a protected liberty interest in FSA time credits or being placed in prerelease custody, and therefore, his requested relief cannot be granted.

**a. Petitioner does not have a protected liberty interest in FSA time credits.**

The Fourth Circuit recently held "that a prisoner claiming rights to FSA time credits cannot show that he has a statutory entitlement to those credits." *See White v. Warden of Fed. Corr. Inst. - Cumberland*, 164 F.4th 326, 334 (4th Cir. 2026). In effect, the absence of a liberty interest in FSA time credits is a complete defense against any claim of due process violations related to time credits. The Fourth Circuit reasoned that "[b]ecause the earning and application of FSA time credits are contingent upon numerous conditions both within and outside of a prisoner's control, the FSA does not create a statutory entitlement to those credits." *See id*.

With its holding in *White*, the Fourth Circuit joined the Second, Fifth, and Sixth Circuits in finding that inmates do not have a protected liberty interest in their FSA time credits. *See Vargas v. Rivers*, 2025 WL 1380067, at *1 (5th Cir. May 13, 2025) (per curiam) (concluding inmates have "no fundamental liberty interest in either participation in [qualifying programming] or the incentives associated with that voluntary participation, including the ability to earn FSA time credits"); *Sedlacek v. Rardin*, 2025 WL 948485, at *1 (6th Cir. Jan. 21, 2025) (concluding "because the FSA earned-time credits are conditional [on the inmate's participation in qualifying programs], they do not create a protected liberty interest"); *see also Cheng v. United States*, 132 F.4th 655, 659 (2nd Cir. 2025) (per curiam).

Petitioner does not have a protected liberty interest in his FSA time credits. Thus, his request regarding the application of his time credits is not cognizable in a habeas action, and

therefore, should be denied.

**b. Petitioner does not have a protected liberty interest in prerelease custody placement.**

Lastly, in his numerous filings, Petitioner asks the Court to determine his eligibility for prerelease custody placement/home confinement. See, e.g., ECF No. 1, pg. 7; ECF No. 3, pg. 5. However, Petitioner has no right to be designated to prerelease custody, as prisoners do not have a protected liberty interest in being placed on home confinement or in a RRC. *See Whittenberg v. Ziegler*, No. 5:12-cv-01430, 2015 WL 2406111, at *1 n.2 (S.D. W. Va. May 19, 2015) (providing a detailed analysis of why inmates do not possess a constitutionally protected interest in home or community confinement).

Additionally, the Court does not have authority to review the BOP's determination regarding placement of an inmate. *See Cupp v. Warden, USP Hazelton*, No. 24-6991, 2025 WL 1502433 (4th Cir. May 27, 2025). In *Cupp*, the Fourth Circuit has affirmed a Northern District of West Virginia ruling:

> Section 3632 does not impose on the BOP a specific and discrete duty amenable to review by this Court. By rejecting the analysis in *Woodley*, this Court is keeping in line with what other courts have been doing regarding placement. This Court and others have found that determinations of whether to release a prisoner to an RRC or home confinement are not reviewable.

*Cupp v. Warden*, No. 5:24-cv-00145-JPB-JPM (N.D. W. Va. Sept. 13, 2024 & Oct. 1, 2024).

In light of the First Step Act going into effect, courts have reiterated that the "Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement." *Winegar v. Adams*, 2021 WL 5629920, at *6 (N.D. W. Va. Nov. 3, 2021) (Mazzone, M.J.), *report and recommendation adopted*, 2021 WL 5629480 (N.D. W. Va. Nov. 30, 2021) ("with respect to halfway house placement or home confinement, the

petitioner is requesting that this Court order the BOP to place her in an RRC for twelve months or, in the alternative, place her on home confinement. This Court does not have the authority to do so."); *Crum v. Young*, 2021 WL 2843835, at *6 (S.D. W. Va. Jan. 27, 2021), *report and recommendation adopted*, 2021 WL 2434358 (S.D. W. Va. June 15, 2021) ("while the First Step Act provides criteria for the BOP to consider when designating an inmate to a place of imprisonment, it also states unequivocally that the BOP's designation is not subject to judicial review."); *United States v. Smith*, 2019 WL 4016211, at *2 (W.D. Va. Aug. 26, 2019) ("While the Second Chance Act and the First Step Act expand the BOP's authority to place prisoners, they do not vest placement authority in this Court.") (citations omitted).

These decisions are in accord with the clear language of 18 U.S.C. § 3621(b): that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." This also is aligned with Supreme Court precedent that has not been overturned in the wake of the FSA. *See United States v. Wilson*, 503 U.S. 329, 335 (1992) (only the Attorney General, acting through BOP, may administer a federal inmate's sentence, including where an inmate serves his sentence); *Moody v. Daggett*, 429 U.S. 78, 88 (1976) (there is no liberty interest in a prison custody or security classification).

Thus, the BOP has sole discretion to determine if an inmate applying FSA time credits would be placed in prerelease custody and whether that prerelease custody would be home confinement or in an RRC. Because denial or delay of prerelease custody would not affect the duration of an inmate's sentence in a constitutionally cognizable way, claims such as Petitioner's may not be redressed through a federal habeas petition. *See In re McCall*, 32 F. App'x 80 (4th Cir. 2002) (finding "no clear right" to serve a sentence at a particular correctional institution); *see also In re Rice*, 33 F. App'x 108 (4th Cir. 2002) (same).

As such, Petitioner does not have a protected liberty interest in prerelease custody placement and his request should be denied.

## IV. CONCLUSION

For the foregoing reasons, Respondent respectfully requests that the Petition, and any and all relief requested by Petitioner in this action, be denied.

Respectfully submitted,

MOORE CAPITO
United States Attorney

**s/Seth Frederick**
Assistant United States Attorney
SC State Bar No. 104132
United States Attorney's Office
300 Virginia Street, E, Room 4000
Charleston, WV 25301
P: 304-345-2200 F: 304-347-5443
E: seth.frederick@usdoj.gov
*Counsel for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2026, I electronically filed the foregoing with the Court using the CM/ECF system which will send notification to CM/ECF users and by U.S. Postal Service to the following:

Robert Rivernider
#96006-004
BECKLEY FCI SATELLITE CAMP
P. O. Box 350
Beaver, WV 25813

**s/Seth Frederick**
Assistant United States Attorney