# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

**ROBERT RIVERNIDER,**

**Petitioner,**

**v.** **Case No. 5:26-cv-00459**

**WARDEN, FCI BECKLEY,**
**SATELLITE CAMP,**

**Respondent.**

**DECLARATION OF ATHENA JONES-BONNER**

In accordance with the provisions of Section 1746 of Title 28, United States Code, I, Athena Jones-Bonner, do hereby make the following declaration:

1. I am employed by the U.S. Department of Justice Federal Bureau of Prisons ("BOP") as a Correctional Programs Specialist at the Designation and Sentence Computation Center, Grand Prairie, Texas. I have been employed by the BOP since May 2002. I have worked in the area of inmate sentence computation since September 2008.

2. As a Correctional Programs Specialist, I have access to records maintained by the BOP regarding federal inmates. This information includes, but is not limited to, access to the BOP's CICLOPS computer database (formerly SENTRY), which tracks the status and activities of inmates while in federal custody, including judgment and commitment files and inmate central files.

3. I have reviewed the sentence computation for Robert Rivernider ("Petitioner"), Federal Register Number 96006-004, is an inmate currently designated by the BOP to serve his federal sentence at Federal Correctional Institution ("FCI") Beckley, West Virginia.

4. On November 4, 2010, Petitioner was indicted and a federal arrest warrant was issued by the United States District Court for the District of Connecticut in Case No. 3:10-CR-00222.

5. On November 5, 2010, the Federal Bureau of Investigations ("FBI") executed a warrant for the Petitioner's arrest in Case No. 3:10-CR-00222.

6. On March 18, 2011, Petitioner was released on bond in Case No. 3:10-CR-00222.

7. On December 18, 2013, was a sentenced in the United States District Court for the District of Connecticut to a 144-month term of imprisonment for Conspiracy to Commit Wire Fraud

and Wire Fraud in Case No. 3:10-CR-00222. The Court further ordered Petitioner to serve a term of three years supervised release on Counts 1-8 and 10-13, and a term of five years supervised release on Counts 9 and 14-18, all terms to run concurrently.

8. On January 29, 2014, Petitioner surrendered to BOP custody at FCI Jesup, Georgia, for service of his 144-month federal term of imprisonment.

9. On May 12, 2020, the United States District Court for the District of Connecticut granted Petitioner's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a) in Case No. 3:10-CR-00222. As a condition of release, the Court ordered Petitioner to spend the first six months of his supervised release on home confinement as a substitute for incarceration.

10. On May 13, 2020, the United States District Court for the District of Connecticut entered a Second Order Regarding Compassionate Release, thereby modifying its first order and reducing Petitioner's sentence to time served in Case No. 3:10-CR-00222.

11. On November 22, 2024, a Transfer of Jurisdiction was filed the United States District Court for the Middle District of Florida to assume oversight of the Petitioner's supervised release obligations from the United States District Court for the District of Connecticut in Case No. 3:10-CR-00222. (Receiving Court Case No. 5:24-CR-00138).

12. On January 14, 2025, a petition was filed in the United States District Court for the Middle District of Florida charging Petitioner with violating the conditions of his supervised release in Case No. 5:24-CR-00138.

13. On June 25, 2025, the United States Marshals Service executed a warrant for the Petitioner's arrest in connection with the supervised release violation petition filed in Case No. 5:24-CR-00138.

14. On December 12, 2025, Petitioner was sentenced in the United States District Court for the Middle District of Florida to a 36-month term of imprisonment for a violation of his supervised release conditions in Case No. 5:24-CR-00138.

15. The BOP prepared a federal sentence computation on Case No. 5:24-CR-00138 based on the 36-month term of imprisonment commencing on December 12, 2025, the date the sentence was imposed. Petitioner's revocation sentence was computed as an independent term of imprisonment pursuant to 18 U.S.C. §§ 3583(e)(3), (h). The BOP credited Petitioner with 171 days of prior custody credit against the revocation sentence—from June 25, 2025 (the date of his arrest), through December 12, 2025 (the date his revocation sentence was imposed)—as Petitioner was in federal custody during this period of time awaiting sentencing and this time has not been credited against another sentence. Additionally, Petitioner is projected to earn 162 days of GCT resulting in a projected release date of January 13, 2028, via GCT release.

16. Pursuant to BOP Program Statement 1351.05, *Release of Information*, inmates may not possess copies of their Presentence Investigation Report ("PSR"). Petitioner may review his PSR by making a request to his unit team in accordance with the procedures set out in the program statement.

17. Attached are true and accurate copies of the following documents, some with redactions for security and privacy reasons:

| | |
|---|---|
| Attachment A: | Indictment |
| Attachment B: | Arrest Warrant (Case No. 3:10-CR-00222) |
| Attachment C: | Appearance Bond |
| Attachment D: | Judgment |
| Attachment E: | USM 129 Individual Custody/Detention Report |
| Attachment F: | Order Granting Motion for Compassionate Release |
| Attachment G: | Second Order Regarding Compassionate Release |
| Attachment H: | Transfer of Jurisdiction |
| Attachment I: | Superseding Petition for Offender Under Supervised Release |
| Attachment J: | Arrest Warrant (Case No. 5:24-CR-00138) |
| Attachment K: | Judgment in a Criminal Case |
| Attachment L: | BOP Program Statement 5880.28, pgs. 1 – 68, 1 – 69 |
| Attachment M: | Public Information Inmate Data |

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of September 2026.

ATHENA JONES BONNER Digitally signed by ATHENA JONES BONNER Date: 2026.09.09 12:27:55 -05'00'

Athena Jones-Bonner
Correctional Programs Specialist
Designation and Sentence Computation Center
Grand Prairie, Texas

# Attachment A

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

Grand Jury N-09-1

2010 NOV -4 P 3:40 U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 3:10CR222 (EBB) |
| v. | : | VIOLATIONS: |
| | : | |
| | : | 18 U.S.C. § 1349 (Conspiracy) |
| | : | 18 U.S.C. §§ 1343 & 2 (Wire Fraud) |
| ROBERT RIVERNIDER, ROBERT PONTE, and LORETTA SENECA | : | 26 U.S.C. § 2701 (Evasion of Payment) |
| | : | 26 U.S.C. § 2701 (Evasion of Assessment) |

INDICTMENT

The Grand Jury charges:

BACKGROUND

The Defendants

1. At all times relevant to this Indictment, defendant ROBERT RIVERNIDER (hereinafter RIVERNIDER) resided and worked in the West Palm Beach area of Florida. RIVERNIDER had training as a mortgage broker and in the debt consolidation business. Beginning in or about 2005, RIVERNIDER worked for a company ("the Company") that, through Internet-based services and otherwise, provided advice to those seeking to consolidate and repay debts.

2. During the times relevant to this Indictment, defendant ROBERT PONTE (hereinafter PONTE) first resided and worked in Dobbs Ferry, New York, then in New Fairfield, Connecticut, and then Stonington, Connecticut. In or about 2005, RIVERNIDER met PONTE and recruited him to work in the New England region for the Company. RIVERNIDER and PONTE, in part while still working for the Company, undertook the conspiracies and schemes

identified below in this Indictment.

3. At all times relevant to this Indictment, defendant LORETTA SENECA (hereinafter SENECA), a mortgage broker and the older sister of RIVERNIDER, worked with RIVERNIDER, PONTE and others to gather information and process most of the real estate transactions that form the basis for the conspiracy and scheme to defraud alleged in Counts Nine through Eighteen. During all times relevant to this Indictment, SENECA resided in the West Palm Beach and Boca Raton areas of Florida, and, as part of the conspiracy and scheme to defraud alleged in Counts Nine through Eighteen, purchased one or more properties in Florida and/or Tennessee, signing a loan application and HUD statement that misrepresented, among other things, the true purchase price of the property, her monthly income, the occupancy status of the property, and the earnest money payments.

Entities/Alter Egos Associated with RIVERNIDER and PONTE

4. In or about June 2006, RIVERNIDER established Cut Above Ventures LLC ("Cut Above Ventures"), a New Mexico limited liability company with its principal place of business in Florida. RIVERNIDER solely owned this company and was its president. Cut Above Ventures held at least three checking accounts at Bank of America, the statements of which were sent to RIVERNIDER at the West Palm Beach residence of his younger sister. RIVERNIDER had sole signing authority for the accounts. PONTE and RIVERNIDER funneled through these accounts most of the investor monies that are the subject of the conspiracies and schemes set forth in this Indictment.

5. Beginning in or about 2005, PONTE started doing business in the name of The Hudson Group. He established a website in this name to market a debt reduction program called

"No More Bills."

6. In or about October 2006, PONTE established Falling Rock LLC ("Falling Rock"), a New Mexico limited liability company with its principal place of business in Connecticut. The company had no employees and no physical office location, and did not file tax returns or pay taxes. In or about October 2006, PONTE opened a non-interest bearing checking account for Falling Rock at Bank of America. PONTE received monthly bank statements for the account at his Connecticut address. PONTE used this account to receive payments from the Company and Cut Above Ventures, and the account was instrumental to PONTE engaging in tax evasion as outlined below in Counts Nineteen and Twenty.

The Victim Investors and Victim Borrowers

7. As described in greater detail below in Counts One through Eight, RIVERNIDER and PONTE conspired to defraud and engaged in a scheme to defraud investors, hereinafter referred to as "Victim Investors," into giving money to PONTE and RIVERNIDER for purported debt reduction plans.

8. As described in greater detail below in Counts Nine through Eighteen, RIVERNIDER, PONTE, SENECA and others conspired to defraud and engaged in a scheme to defraud a number of individuals into purchasing real estate investment properties based on material misrepresentations, concealed facts, and material omissions. Those individuals, hereinafter referred to as the "Victim Borrowers," included a large number of the Victim Investors.

## The Victim Lenders

9. As described in greater detail below in Counts Nine through Eighteen, RIVERNIDER, PONTE, SENECA and others conspired to defraud and engaged in a scheme to defraud various mortgage lenders, collectively referred to as the "Victim Lenders," into loaning monies to the Victim Borrowers based on a series of materially false and fraudulent representations. Those Victim Lenders included, among others: 1) SunTrust Mortgage Inc. with offices in Richmond, Virginia, among other locations, and 2) Wells Fargo Bank, NA, with offices in Miami and Stuart, Florida, among other locations.

10. At all times relevant to this Indictment, Wells Fargo Bank, NA, was a financial institution with deposits insured by the Federal Deposit Insurance Corporation (FDIC).

## COUNT ONE -- CONSPIRACY
18 U.S.C. § 1349

### The Conspiracy to Defraud Victim Investors

11. The allegations contained in Paragraphs 1, 2, 4-7 of this Indictment are realleged and incorporated as though fully set forth herein.

12. Beginning in or about June 2005 and continuing to in or about April 2008, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, defendants RIVERNIDER and PONTE did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and others known and unknown to the Grand Jury to commit offenses against the United States, namely, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing and

attempting to execute the scheme and artifice did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

Purpose of the Conspiracy

13. The purpose of the conspiracy was for RIVERNIDER and PONTE to enrich themselves by defrauding the Victim Investors of monies based on misrepresentations that the monies would be invested in legitimate, high-return investments.

Manner and Means of the Conspiracy

14. The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, those set forth in ¶¶ 15-20.

15. It was part of the conspiracy that beginning in 2005, RIVERNIDER and PONTE used the Internet and other means to market a debt payment program typically called "No More Bills" through The Hudson Group. With the "No More Bills" program, RIVERNIDER and PONTE sought Victim Investors to invest monies with them, monies which typically the Victim Investors would raise through home equity lines of credit or monies borrowed from 401K plans.

16. It was part of the conspiracy that RIVERNIDER and PONTE materially misrepresented and caused to be misrepresented, among other things:

a. That the Victim Investors would receive a substantial investment return, typically a monthly repayment on the invested monies of approximately seven to ten percent of their initial investment.

b. That the returns would continue for a period substantially longer than needed to recoup the initial investment and result in a return substantially greater than the initial investment.

c. That the Victim Investors' existing debts and home equity lines of credit, if taken out to fund the investment, would be repaid in full from investment returns.

d. That the Victim Investors' monies were being invested offshore in legitimate high- return investments, including investments in foreign currency exchanges, hedge funds, or other high-yield ventures.

17. It was part of the conspiracy that PONTE would often explain that he was working with a business partner, RIVERNIDER, who had specialized knowledge in investments. PONTE frequently explained that he and RIVERNIDER were pooling investor funds to allow them to invest like the large investors in the market.

18. It was part of the conspiracy that, in truth and in fact, as RIVERNIDER and PONTE well knew, the representations made to the Victim Investors were materially false and misleading. RIVERNIDER and PONTE knew that the invested monies could not and would not earn the returns advertised, that the returns would not pay out significantly more than the investment, that the monies invested by the later Victim Investors would not be repaid in full, and that the invested monies were not being invested as represented, including not being invested in foreign currency exchanges and hedge funds. Instead, the monies were used to pay, among other things, the preexisting debts of other investors and the living expenses of the extended family of RIVERNIDER and PONTE.

19. It was part of the conspiracy that PONTE, from his home/office in Connecticut, would routinely talk and correspond by email with the Victim Investors, his assistant in New York and his coconspirator RIVERNIDER in Florida. Upon receipt of information in Connecticut from the Victim Investors, PONTE would forward the relevant applications and other financial information to RIVERNIDER in Florida. RIVERNIDER would review and

approve the purported investment plans, including the advertised returns.

20. It was part of the conspiracy that, if the Victim Investors remained interested in investing in the purported investment plan, RIVERNIDER and PONTE would instruct them or cause for them to be instructed to wire monies for investment to one of the bank accounts held in the name of Cut Above Ventures. RIVERNIDER would then direct the use of the monies either through wiring instructions or by writing checks on the account.

Overt Acts

21. In furtherance of the conspiracy, and to accomplish its purposes and objects, the defendants RIVERNIDER, PONTE and others known and unknown to the Grand Jury committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

a. On or about September 13, 2006, RIVERNIDER emailed PONTE with the terms of the investment plan for the Victim Investor Michael M. for an investment amount of $250,000.

b. On or about May 14, 2007, PONTE emailed RIVERNIDER asking whether RIVERNIDER had a chance to finish the purported investment plan for the Victim Investor Richard B.

c. Between July and August 2007, PONTE talked by telephone with the Victim Investor Maria M. on multiple occasions convincing her to invest with PONTE and RIVERNIDER.

d. On or about July 20, 2007, PONTE talked by telephone with the Victim Investor Robben W. about the investment plan.

e. On or about Labor Day Weekend, 2007, PONTE met with the Victim Investor Joel B. to discuss investing with PONTE and RIVERNIDER.

f. In or about April 2007, PONTE talked by telephone with the Victim Investor Scott M. about the investment plan.

g. On or about September 5, 2007, responding to an email from PONTE regarding the interest of the Victim Investor Louis C. in investing with PONTE and RIVERNIDER, RIVERNIDER emailed instructions to sell the plan to the investor and have Louis C. send in money.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TWO through EIGHT - Wire Fraud
18 U.S.C. §§ 1343 & 2

The Scheme to Defraud the Victim Investors

22. The allegations contained in Paragraphs 1, 2, 4-7, and 15-20 of this Indictment are realleged and incorporated as though fully set forth herein.

23. From in or about June 2005 through in or about April 2008, in the District of Connecticut and elsewhere, defendants RIVERNIDER and PONTE knowingly, willfully and with intent to defraud devised and intended to devise a scheme and artifice to defraud the Victim Investors and to obtain money and property from these investors by means of materially false and fraudulent pretenses, representations and promises, which scheme and artifice is in substance set forth in ¶¶ 15-20 above.

24. As a result of the scheme, PONTE and RIVERNIDER exposed the Victim Investors to a risk of loss, and the Victim Investors suffered significant losses.

The Execution of the Scheme and Artifice to Defraud

25. On or about the dates listed below, in the District of Connecticut and elsewhere, having devised and intended to devise a scheme and artifice to defraud the Victim Investors, and for obtaining money and property from the Victim Investors by means of materially false and fraudulent pretenses, representations and promises as set forth in ¶¶ 15-20 above, for the purpose of executing such aforementioned scheme and artifice, RIVERNIDER and PONTE transmitted

and caused to be transmitted by means of a wire and radio communication in interstate commerce, the following writings, signs, signals, pictures and sounds, with each wiring constituting a separate count of this Indictment as enumerated below:

| Count | Wiring Date (on or about) | Origin of Wiring | Destination of Wiring | Description | Victim Investor |
|---|---|---|---|---|---|
| 2 | 11/27/2006 | CT | NJ | Email between PONTE and Victim Investor Michael M. with wiring instructions | Michael M. |
| 3 | 6/1/2007 | CT | CA | Phone call between PONTE and Victim Investor Richard B. | Richard B. |
| 4 | 8/2/07 | NY | CT, FL | Email among PONTE's assistant, PONTE and RIVERNIDER regarding Victim Investor Maria M.'s potential investment | Maria M. |
| 5 | 9/8/07 | CT | CA, NY | Email from PONTE to PONTE's assistant and Victim Investor Robben W. with wiring instructions for potential investment | Robben W. |
| 6 | 9/07/2007 | CT | AZ | Phone call between PONTE and Victim Investor Joel B., following email communications between them | Joel B. |
| 7 | 9/12/2007 | CT | NM | Wire transfer of funds from Victim Investor Scott M. to Cut Above Ventures | Scott M. |
| 8 | 9/14/2007 | CT | NM | Wire transfer of funds from Victim Investor Louis C. to Cut Above Ventures | Louis C. |

All in violation of Title 18, United States Code, Sections 1343 & 2.

COUNT NINE - CONSPIRACY
18 U.S.C. § 1349

26. The allegations contained in Paragraphs 1-10 of this Indictment are realleged and incorporated as though fully set forth herein.

The Conspiracy to Defraud the Victim Lenders and Victim Borrowers

27. Beginning in November 2006 and continuing to in or about December 2007, the exact dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, defendants RIVERNIDER, PONTE, and SENECA did unlawfully, knowingly and intentionally conspire, combine, confederate and agree with each other and others, known and unknown to the Grand Jury, to commit offenses against the United States, namely, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property from the Victim Lenders, including affecting a financial institution, and the Victim Borrowers by means of materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing and attempting to execute the scheme and artifice, did transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

Purpose of the Conspiracy

28. The purpose of the conspiracy was for RIVERNIDER, PONTE, SENECA and others known and unknown to the Grand Jury to enrich themselves by defrauding the Victim Lenders to extend loans to finance the purchase of properties based on misinformation and by defrauding the Victim Borrowers into seeking such lending.

Manner and Means of the Conspiracy

29. The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, those set forth in ¶¶ 30-35.

30. It was part of the conspiracy that RIVERNIDER, PONTE, and others would and did recruit the Victim Borrowers to take out financing to purchase various investment properties, primarily in Tennessee and Florida, with financing from the Victim Lenders. RIVERNIDER and PONTE typically represented to the Victim Borrowers that these properties would be passive investments and that PONTE and RIVERNIDER would be responsible for the details of the purchase, rental, maintenance and payment of the mortgages on the properties.

31. It was part of the conspiracy that RIVERNIDER, PONTE, and others made material misrepresentations and material omissions and concealed material facts from the Victim Borrowers, including representing that RIVERNIDER and PONTE would arrange for the purchase of the properties by the Victim Borrowers at markedly discounted values. In fact, RIVERNIDER and PONTE frequently marked up the purchase price of the properties to the Victim Borrowers often by as much as twenty-five percent without disclosing the increase in the purchase price.

32. It was also part of the conspiracy that RIVERNIDER, PONTE and others represented that the investment properties would return to the Victim Borrowers sufficient monies to cover the carrying costs as well as reduce the Victim Borrowers' other debt burden, when RIVERNIDER, PONTE, and others knew that the returns would not produce such returns.

33. It was part of the conspiracy that RIVERNIDER, PONTE, and others falsified certain of the Victim Borrowers' material financial information in order to obtain financing from the Victim Lenders to purchase the properties and either did not inform the Victim Borrowers of the misrepresentations or provided explanations for the figures that were inconsistent with what the lenders would allow.

34. It was part of the conspiracy that RIVERNIDER, PONTE, SENECA and others caused to be represented in loan applications and other documents provided to the Victim Lenders a number of material misrepresentations, including, among others: (1) the true arms-length purchase price of the property (which was routinely markedly overstated); (2) the income earned by the respective Victim Borrower (which was routinely markedly overstated); (3) the assets of the Victim Borrower (which were often overstated); (4) the liabilities of the Victim Borrower (which were often understated); (5) the true earnest payments coming from the Victim Borrower (which were routinely fronted by RIVERNIDER, PONTE and SENECA); and (6) the true intended occupancy status of the properties (which, for example, were often represented to be second homes, when the intent was for them to be rental properties).

35. It was part of the conspiracy that SENECA, a trained mortgage broker, was actively involved in the real estate transactions put together with RIVERNIDER and PONTE, including organizing and gathering many of the materials needed by the Victim Lenders, gathering certain information from the Victim Borrowers, providing certain comparables based on properties brokered by RIVERNIDER to be used for purportedly independent appraisals, and a range of other background tasks necessary for the relevant loans to close.

Overt Acts

36. In furtherance of the conspiracy, and to accomplish its purposes and objects, RIVERNIDER, PONTE, SENECA and others, known and unknown to the Grand Jury, committed and caused others to commit at least one of the following overt acts, among others, in the District of Connecticut and elsewhere:

a. On or about May 8, 2007, PONTE signed as a witness on closing documents involving the property purchased by the Victim Borrower Donna M.

b. On or about March 8, 2007, PONTE emailed the Victim Borrower Robert B., forwarding an email from RIVERNIDER regarding the contract for a Tennessee property.

c. On or about March 8, 2007, PONTE emailed to the wife of the Victim Borrower Curtis W., forwarding a contract for a Tennessee property.

d. On or about March 23, 2007, PONTE discussed by telephone with the Victim Borrower Robert C. investing in cabins or condos.

e. On or about May 16, 2007, RIVERNIDER emailed PONTE about a real estate deal for the Victim Borrower Lisa G.

f. On or about May 24, 2007, PONTE emailed the Victim Borrower Alfred V. real estate investment options.

g. On or about July 2, 2007, PONTE emailed RIVERNIDER with information on settlement for the Victim Borrower Bruce P.

h. On or about July 13, 2007, PONTE's assistant emailed PONTE the signed contract from the Victim Borrower Michael Mc. and also forwarded the contract by email to RIVERNIDER.

i. On or about November 2, 2007, PONTE emailed the Victim Borrower Joel B., seeking him to fax asset information to a mortgage consultant for a real estate purchase.

All in violation of Title 18, United States Code, Section 1349.

COUNTS TEN through EIGHTEEN - Wire Fraud
18 U.S.C. §§ 1343 & 2

Scheme to Defraud the Victim Lenders and the Victim Borrowers

37. The allegations contained in Paragraphs 1-10, and 30-35 of this Indictment are realleged and incorporated as though fully set forth herein.

38. From in or about November 2006 through in or about December 2007, in the District of Connecticut and elsewhere, defendants RIVERNIDER, PONTE, SENECA and others known and unknown to the Grand Jury knowingly, willfully and with intent to defraud devised and intended to devise a scheme and artifice to defraud the Victim Lenders, including affecting a financial institution, and the Victim Borrowers to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, which scheme and artifice is in substance set forth in ¶¶ 30-35.

39. The Victim Lenders extended a number of loans to the Victim Borrowers to purchase properties primarily in Tennessee and Florida. As a result of the scheme, the Victim Lenders and the Victim Borrowers were subjected to a risk of loss and suffered significant losses.

The Execution of the Scheme and Artifice to Defraud

40. On or about the dates listed below, in the District of Connecticut and elsewhere, having devised and intended to devise a scheme and artifice to defraud the Victim Borrowers and the Victim Lenders, and for obtaining money and property from the Victim Borrowers and the Victim Lenders by means of materially false and fraudulent pretenses, representations and promises as set forth in ¶¶ 30-35, for the purpose of executing such aforementioned scheme and artifice, RIVERNIDER, PONTE and SENECA transmitted and caused to be transmitted by

means of a wire and radio communication in interstate commerce, the following writings, signs, signals, pictures and sounds, with each wiring constituting a separate Count of this Indictment as enumerated below:

| Count | Date of Wiring (on or about) | Origin of Wiring | Destination of Wiring | Description | Victim Lender (approx. closing date) | Victim Borrower |
|---|---|---|---|---|---|---|
| 10 | 3/19/2007 | FL | CT | Email from RIVERNIDER to PONTE regarding information for the loan for Victim Borrower Donna M. | Suntrust (5/8/07) | Donna M. |
| 11 | 3/08/2007 | CT | MI | Email from PONTE to Victim Borrower Robert B. forwarding email from RIVERNIDER for contract for Tennessee property | Suntrust (6/21/07) | Robert B. |
| 12 | 3/8/07 | CT | NY | Email from PONTE forwarding Victim Borrower Curtis W.'s wife a contract for a Tennessee property, to which she responds by email the same day | Suntrust (6/5/07) | Curtis W. |
| 13 | 3/23/07 | AZ | CT | Email from Victim Borrower Robert C. to PONTE regarding cabin/condos, following up a phone conversation | Suntrust (6/7/07) | Robert C. |

| Count | Date of Wiring (on or about) | Origin of Wiring | Destination of Wiring | Description | Victim Lender (approx. closing date) | Victim Borrower |
|---|---|---|---|---|---|---|
| 14 | 5/16/2007 | FL | CT | Email from RIVERNIDER to PONTE regarding a real estate deal with Victim Borrower Lisa G. | Wells Fargo (6/29/07) | Lisa G. |
| 15 | 5/24/2007 | CT | CO | Email from PONTE to Victim Borrower Alfred V. with investment options regarding condos | Wells Fargo (8/6/07) | Alfred V. |
| 16 | 7/2/2007 | CA | CT | Email from Victim Borrower Bruce P. to PONTE | Wells Fargo (6/29/07) | Bruce P. |
| 17 | 7/13/07 | NY | CT, FL | Email from PONTE's assistant to PONTE with the signed contract from Victim Borrower Mike Mc.; email also sent to RIVERNIDER | Wells Fargo (8/7/07) | Mike Mc. |
| 18 | 11/02/2007 | CT | AZ | Email from PONTE to Victim Borrower Joel B. seeking asset information for real estate deal | Wells Fargo (11/30/07) | Joel B. |

All in violation of Title 18, United States Code, Sections 1343 & 2.

COUNT NINETEEN -- Tax Evasion (of Payment)
26 U.S.C. § 7201

Background

41. The allegations contained in Paragraphs 1-10, 15-20, 30-35 of this Indictment are realleged and incorporated as though fully set forth herein.

42. During the 2001 calendar year, defendant PONTE earned taxable income by: the liquidation of two individual retirement accounts in his name held by the Vanguard Group, totaling $128,241; form W-2 wage income from his employment by Cognet Corp., totaling $57,635; and a form 1099-R pension distribution, totaling $13,935, relating to his withdrawal from the savings plan established by his former employer, Siemens Corporation.

43. In the Spring of 2002, PONTE contacted a Certified Public Accountant he had used previously to prepare his federal personal income tax return for 2001. The accountant informed PONTE that he owed approximately $62,980 in taxes for the 2001 tax year. Despite credit for prior withholdings made by Cognet Corp. and a partial payment made by PONTE to seek an extension for the filing of the return until or about August 2002, PONTE remained with a significant outstanding tax liability. Thereafter the Internal Revenue Service (IRS) sent notices to PONTE of his continuing tax obligation, including that, in December 2003, the IRS notified him that the deficiency had grown to approximately $76,632, including penalties and interest. PONTE periodically continued to receive notices of deficiency relating to his 2001 deficiency, including notices in 2004, 2008, and 2009.

Evasion of Payment

44. In or about November 2003 until in or about February 2010, in the District of Connecticut and elsewhere, PONTE did willfully attempt to evade and defeat the payment of a large part of the income tax, penalties and interest due and owing by him to the United States of America for the calendar year 2001, which by February 2010 totaled approximately $99,086, by one or more affirmative acts of evasion, including the following acts while living and working in Connecticut:

a. having in October 2006 opened a non-interest bearing checking account in the name of Falling Rock LLC, rather than in his own name, PONTE caused to be deposited income earned from the illegal ventures identified above in Counts One through Eighteen, including $5000 on July 9, 2007; $18,700 on August 17, 2007; $49,750 on Sept. 26, 2007; and $5000 on Nov. 7, 2007;

b. between March 2007 and July 2008, PONTE caused to be made from the Falling Rock LLC account one or more payments for leasing or maintaining a Mercedes stationwagon that was used primarily by him, but leased in the name of a former girlfriend, those payments made on or about the following dates March 9, April 17, June 8, June 26, July 5, August 8, August 30, October 4, November 20, November 30, December 21, December 28, 2007, and February 29, March 28, May 2, May 27, May 30, June 2, June 30, July 2, 2008, all totaling approximately $15,031;

c. between January 2007 and February 2009, PONTE caused to be made one or more payments toward a residence where he resided alone or with a girlfriend that was owned in the name of another person, including payments made on or about:

i. April 23, Sept. 17, October 1, October 10, and October 15, 2007, and March 25, May 28, June 2, and June 6, 2008, and February 9, 2009 for property tax, sewage or water usage, totaling $5,288;

ii. January 4, May 2, June 4, and December 20, 2007 and January 7, February 20, 2008 for heating oil, totaling $5670;

iii. June 14, July 9, July 12, August 13, October 10, October 16, October 22, November 6, and December 3, 2007 and March 18, June 3, 2008 for landscaping expenses, totaling $12,561;

iv. September 5, 2007 for partial construction expenses for a pool, totaling $7,600;

v. September 24, 2007 and January 8, 2008 for a privacy fence, totaling $3,040.

All in violation of Title 26, United States Code, Section 7201.

COUNT TWENTY – Tax Evasion (of Assessment)
26 U.S.C. § 7201

45. The allegations contained in Paragraphs 1-10, 15-20, 30-35, 44(a)-(c) of this Indictment are realleged as though fully set forth herein.

46. During the calendar year 2007, defendant PONTE, a resident of Stonington, Connecticut, had received taxable income in the sum of approximately $242,364, which reflected monies obtained from Cut Above Ventures, commissions from No More Bills and two invoices for computer services rendered the Company. Upon that taxable income, there was owing to the United States of America an income tax of approximately $58,701. Well knowing and believing

the foregoing facts, PONTE, on or about April 15, 2008, in the District of Connecticut, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the calendar year by failing to make an income tax return on or before April 15, 2008, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service the income tax, and by one or more of the affirmative acts of evasion taken during the 2007 tax year and continuing on or after April 15, 2008, as identified above at ¶ 44(a)-(c).

All in violation of Title 26, United States Code, Section 7201.

A TRUE BILL

/s/

FOREPERSON

DAVID B. FEIN
UNITED STATES ATTORNEY

JOHN H. DURHAM
COUNSEL TO THE UNITED STATES ATTORNEY

CHRISTOPHER W. SCHMEISSER
ASSISTANT UNITED STATES ATTORNEY

# Attachment B

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Connecticut

United States of America
v.
Robert Rivernider

*Defendant*

Case No. 3:10cr222 (EBB)

True Copy
ATTEST:
ROBERTA D. TABORA
Clerk, U.S. District Court
By [signature]
Deputy Clerk

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* Robert Rivernider,
who is accused of an offense or violation based on the following document filed with the court:

☒ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☐ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

Title 18, U.S. Code, Section 1349, Conspiracy
Title 18, U.S. Code Sections 1343 & 2, Wire Fraud

Date: 11/04/2010

[signature]
*Issuing officer's signature*

City and state: New Haven, CT

Nicola Kelsey, Deputy Clerk
*Printed name and title*

**Return**

This warrant was received on *(date)* 11/4/2010, and the person was arrested on *(date)* 11/5/2010 at *(city and state)* Wellington, Florida.

Date: 11/5/2010

[signature]
*Arresting officer's signature*

William E. Johnson, Special Agent - FBI
*Printed name and title*

# Attachment C

AO 98 (Rev. 11/07) Appearance Bond

# UNITED STATES DISTRICT COURT

District of Connecticut

FILED

2011 MAR 18 A 11: 42

U.S. DISTRICT COURT
NEW HAVEN, CT

UNITED STATES OF AMERICA
V.
Robert Rivernider

Defendant

## APPEARANCE BOND

Case Number: 3:10cr222(EBB)

☑ Non-surety: I, the undersigned defendant acknowledge that I and my . . .
☐ Surety: We, the undersigned, jointly and severally acknowledge that we and our . . .
personal representatives, jointly and severally, are bound to pay to the United States of America the sum of $ 100,000.00, and there has been deposited in the Registry of the Court the sum of $ — in cash or — (describe other security).

The conditions of this bond are that the defendant Robert Rivernider. (Name) is to appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment.

It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review), which shall continue until such time as the undersigned are exonerated.

If the defendant appears as ordered or notified and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above entitled matter at the time of such breach and if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and any other laws of the United States.

SEE ORDER SETTING CONDITIONS OF RELEASE

This bond is signed on 3-18-11 (Date) at New Haven (Place)

Defendant: ROBERT H. RIVERNIDER, JR. [signature]

Surety: Marsha G. Rivernider [signature] ROBERT RIVERNIDER SR [signature]

Surety: Marsha Rivernider, 9246 Delemar Ct, Wellington, FL 33414 (561)246-2038

Signed and acknowledged before me on 3-16-11 (Date)

[signature] Sandra Acevedo
Signature of Judge/Clerk Deputy Clerk
SANDRA ACEVEDO CRD TO JUDGE JOHNSON

Bond Approved: /s/Ellen B.Burns, U.S. District Judge
Signature of Judge

[signature] 3/18/11 Deputy Clerk

AO 98 (Rev. 11/07) Appearance Bond

FILED

# UNITED STATES DISTRICT COURT

District of Connecticut

2011 MAR 18 A 11: 42

U.S. DISTRICT COURT
NEW HAVEN, CT

UNITED STATES OF AMERICA
V.

Robert Rivernider

Defendant

## APPEARANCE BOND

Case Number: 3:10cr222(EBB)

☑ Non-surety: I, the undersigned defendant acknowledge that I and my . . .
☐ Surety: We, the undersigned, jointly and severally acknowledge that we and our . . .
personal representatives, jointly and severally, are bound to pay to the United States of America the sum of $ 100,000.00, and there has been deposited in the Registry of the Court the sum of $ ——— in cash or ——— (describe other security).

The conditions of this bond are that the defendant Robert Rivernider.
Name

is to appear before this court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of defendant's release as may be ordered or notified by this court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment.

It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review), which shall continue until such time as the undersigned are exonerated.

If the defendant appears as ordered or notified and otherwise obeys and performs the foregoing conditions of this bond, then this bond is to be void, but if the defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above entitled matter at the time of such breach and if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each debtor jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and any other laws of the United States.

This bond is signed on 3/17/11 at USDC - EDPA
Date Place

Defendant

Co-Signer Surety Marylouise DeNicola [signature]
Print name Signature

Co-Signer Surety ANTHONY DENICOLA [signature]
Print Name Signature

Signed and acknowledged before me on 3/17/11
Date

Steve Tomso
Signature of Judge/Clerk Deputy Clerk

Bond Approved /s/Ellen B. Burns, U.S.D.J.
U.S. District Judge
Signature of Judge

SEE ORDER SETTING CONDITIONS OF RELEASE

# Attachment D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2013 DEC 23 A 10:49

US DISTRICT COURT
HARTFORD CT

UNITED STATES

V.

ROBERT RIVERNIDER

**JUDGMENT**

CASE NO. 3:10CR222(RNC)
USM: 96006-004

Government's Counsel:
John H. Durham
Christopher W. Schmeisser
U.S. Attorney's Office
157 Church Street, 23rd floor
New Haven, Connecticut 06510

Defendant's Counsel:
James W. Bergenn
Shipman & Goodwin
One Constitution Plaza
Hartford, Connecticut 06103-1919

The defendant pleaded guilty to Counts One through Eighteen of the Indictment. Accordingly, the defendant is adjudicated guilty of the following offenses:

| **Title & Section** | **Nature of Offense** | **Offense Concluded** | **Counts** |
|---|---|---|---|
| 18 U.S.C. § 1349 | Conspiracy to Commit Wire Fraud | April 2008 | 1 & 9 |
| 18 U.S.C. § 1343 | Wire Fraud | April 2008 | 2-8 |
| 18 U.S.C. § 1343 | Wire Fraud | April 2008 | 10-18 |

The following sentence is imposed pursuant to the Sentencing Reform Act of 1984. The Court imposes a non-Guidelines sentence. A lengthy period of imprisonment is necessary in this case to adequately serve the purposes of a criminal sentence under 18 U.S.C. § 3553 in view of the nature, scope and duration of the fraudulent conduct of the defendant and his co-conspirators, the defendant's role as the leader of the conspiracy, and the extensive harm, both economic and non-economic, that was foreseeably caused to the numerous victims of the defendant's fraudulent schemes, especially the individual victims and their families. The extraordinarily long sentence suggested by U.S.S.G. § 2B1.1 is harsher than necessary, however, because the defendant is a 48 year old first offender with two young children, which makes any period of incarceration particularly punitive for him; he did not set out to cause harm; the harm caused by his fraudulent conduct was greatly increased by the collapse of the real estate market; any financial benefit he derived from the fraudulent schemes was minimal compared to the losses; and although his request for a diminished capacity departure under U.S.S.G. § 5K2.13 has been denied, he does appear to suffer from an untreated mental health condition that is present to an unusual degree and likely was a factor in his offense conduct.

**IMPRISONMENT**

The defendant is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 144 months on each of Counts 1 through 18, all terms to be served concurrently. The defendant will self-surrender to the facility designated by the Bureau of Prisons no later than 11:00 a.m. on January 29, 2014. In the absence of a designation, the defendant will self-surrender to a Bureau of Prisons facility as directed by the United States Marshal for the Southern District of Florida.

**RECOMMENDATIONS TO THE BUREAU OF PRISONS**

The Court recommends to the Bureau of Prisons that the defendant be designated to serve his term of imprisonment at the following facilities in this order of preference: 1) FCI Miami Satellite Camp; 2) FCI Coleman; and 3) FPC Pensecola, FL.

**SUPERVISED RELEASE**

The defendant will be on supervised release for a term of three years on each of Counts 1-8 and 10-13, and five years on each of Counts 9, and 14-18, all terms to run concurrently, subject to the mandatory and standard conditions of supervised release set forth below. In addition, the following special conditions are imposed:

1. The defendant will pay restitution at a rate of $500 per month. Monthly payments will be sent to the Clerk, U.S. District Court, 141 Church Street, New Haven, CT 06510. The monthly payment schedule may be adjusted based on the defendant's ability to pay as determined by the Probation Office and approved by the Court. The defendant will pay restitution in accordance with a restitution order that will be entered in this case at a later date.

2. The defendant will not incur credit card charges of more than $250, open additional lines of credit or incur other indebtedness without the prior permission of the Probation Office.

3. The defendant will provide the Probation Office with any requested financial information.

4. As directed by the Probation Office, the defendant will notify third parties of risks that may be occasioned by his criminal record or personal history and characteristics, and will permit the Probation Office to make such notifications and to confirm the defendant's compliance with this notification requirement.

5. The defendant will participate in a program of mental health evaluation, counseling and treatment under the direction of the Probation Office. The defendant will pay all or part of the costs associated with this treatment based on his ability to pay in an amount to be determined by the Probation Office.

6. The defendant will perform 120 hours of community service under the direction of the Probation Office.

5\. The defendant will not possess a firearm or other dangerous weapon.

6\. The defendant will avoid all contact with the victims in this case, excluding members of his immediate family, without prior permission of the Probation Office.

**MONETARY PENALTIES**

The defendant will pay a special assessment of $100 on each of Counts 1-18 for a total of $1,800.

**RESTITUTION**

The defendant will pay restitution in accordance with the restitution order that will be entered in this case.

It is further ordered that the defendant will notify the United States Attorney for this District within 30 days of any change of name, residence or mailing address until the restitution and special assessments imposed by this judgment are paid.

**DATE: December 18, 2013**
Date of Imposition of Sentence

/s/ Robert N. Chatigny, USDJ
Robert N. Chatigny, United States District Judge
Date: December 20, 2013

**RETURN**

I have executed this judgment as follows:

Defendant delivered on ______________________ to ___________________________________

at ____________________________________, with a certified copy of this judgment.

_____________________________________
Joseph P. Faughnan
United States Marshal

By _____________________________________
Deputy Marshal

***CERTIFIED AS A TRUE COPY***
***ON THIS DATE*** 12/23/13
***Roberta D. Tabora, Clerk***
***BY:*** [signature]
***Deputy Clerk***

## CONDITIONS OF SUPERVISED RELEASE

**In addition to the Standard Conditions listed below, the following indicated (■) Mandatory Conditions are imposed:**

## MANDATORY CONDITIONS

■ (1) The defendant shall not commit another federal, state or local offense;
■ (2) The defendant shall not unlawfully possess a controlled substance;
□ (3) The defendant who is convicted for a domestic violence crime as defined in 18 U.S.C. section 3561(b) for the first time shall attend a public, private, or private non-profit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is available within a 50-mile radius of the legal residence of the defendant;
□ (4) The defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on supervised release and at least two periodic drug tests thereafter for use of a controlled substance;
□ (5) If a fine is imposed and has not been paid upon release to supervised release, the defendant shall adhere to an installment schedule to pay that fine;
■ (6) The defendant shall (A) make restitution in accordance with 18 U.S.C. sections 2248, 2259, 2264, 2327, 3663, 3663A, and 3664; and (B) pay the assessment imposed in accordance with 18 U.S.C. section 3013;
■ (7) The defendant shall cooperate in the collection of a DNA sample from the defendant.

While on supervised release, the defendant shall also comply with all of the following Standard Conditions:

## STANDARD CONDITIONS

1. The defendant shall not leave the judicial district or other specified geographic area without the permission of the court or probation officer;
2. The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;
3. The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4. The defendant shall support the defendant's dependents and meet other family responsibilities (including, but not limited to, complying with the terms of any court order or administrative process pursuant to the law of a state, the District of Columbia, or any other possession or territory of the United States requiring payments by the defendant for the support and maintenance of any child or of a child and the parent with whom the child is living);
5. The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6. The defendant shall notify the probation officer at least ten days prior to any change of residence or employment; or if such notification is not possible, then within five days after such change;
7. The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance, or any paraphernalia related to any controlled substance, except as prescribed by a physician;
8. The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court;
9. The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10. The defendant shall permit a probation officer to visit the defendant at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11. The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12. The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13. The defendant shall pay the special assessment imposed or adhere to a court-ordered installment schedule for the payment of the special assessment;
14. The defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay any unpaid amount of restitution, fines, or special assessments.

**The defendant shall report to the Probation Office in the district to which the defendant is released within 72 hours of release from the custody of the U.S. Bureau of Prisons. Upon a finding of a violation of supervised release, I understand that the court may (1) revoke supervision <u>and impose a term of imprisonment</u>, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.**
**These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.**

**(Signed)** ______________________________ ____________
**Defendant** **Date**

______________________________ ____________
**U.S. Probation Officer/Designated Witness** **Date**

# Attachment E

U.S. Department of Justice
United States Marshals Service

**USM 129 Individual Custody/Detention Report**
Printed on: 03/06/2026



PHOTO DATE: 06/25/2025

**Name**
**RIVERNIDER, ROBERT H**

| USMS # | FID # | UCN | SSN | Alien # |
|---|---|---|---|---|
| 96006-004 | 1995928 | 242344KD8 | [redacted] | |

**Current Physical Custody Status**
In - Remanded - Judge Ordered - M/FL - ORLANDO - FDC MIAMI

| Height | Weight | Race | Hair | Eye Color |
|---|---|---|---|---|
| 5'07" | 190 | W | GRY | BRO |

| DOB | Age | Sex |
|---|---|---|
| [redacted] | 60 | M |

## HIGH-LEVEL CAUTION DATA

No High-Level Caution Data On Record

## OTHER IDENTITY DATA

| Name | Source | Source District | Date Created |
|---|---|---|---|
| RIVERNIDER, ROBERT H | NGI | OCALA | 06/25/2025 |

## SUPPLEMENTAL PERSONAL DATA

**DOB**
[redacted]

**SSN**
[redacted]

**Alias**
RIVERNIDER, ROBERT HENRY
RIVERNIDER, BOB
RIVERNIDER, BOB
RIVERNIDER, ROBERT H

**Addresses**
711 W Main St, Leesburg, FL, 34748, USA
14 S Bobwhite Rd, Wildwood, FL, 34785, USA
9246 DELEMAR CT, WELLINGTON, FL 33414, US
14 S Bobwhite Rd, Wildwood, FL, 34785, USA

**Phone Numbers**
**None on record**

**Places of Birth**
US

### Miscellaneous Numbers

| Type | Number | Remark | Source |
|---|---|---|---|
| Operator License Number | R423139850000 | | Law Enforcement Report |
| Operator's License Number | R165768653060 | | Law Enforcement Report |
| Local Booking Number | 0413242 | PBJ | JDIS |
| Criminal State Identification Number | FL04157113 | FLA SID # | JDIS |
| Federal ID (FID) | 1995928 | | JDIS |
| UCN - Universal Control Number/FBI Number | 242344KD8 | | NGI |
| USMS Number | 96006-004 | | JDIS |

### DNA

| Test Date | Deputy | Kit Number | Note |
|---|---|---|---|
| | | E2011051000000018237 | |

## ACTIVE CUSTODY DATA

| Current Owning District | Current District Office | Custody Start Date |
|---|---|---|
| M/FL | ORLANDO | 06/25/2025 |

## PHYSICAL CUSTODY STATUS HISTORY

| Custody Status | Detention Status | Additional Custody Information | Start Date | End Date |
|---|---|---|---|---|
| In | Remanded - Judge Ordered | | 06/25/2025 | |
| In | Arrested | | 06/25/2025 | 06/25/2025 |

## ACTIVE DETAINERS

U.S. Department of Justice
United States Marshals Service

**USM 129 Individual Custody/Detention Report**

Printed on: 03/06/2026

No Active Detainers On Record

## COURT CASE

| Case Number | Case Type | Status | Detention Status | District | Office |
|---|---|---|---|---|---|
| 5:2024-CR-00138 | Arrest - SupervisedReleaseViolation | Revocation Hearing Completed | Remanded - Judge Ordered | M/FL | OCALA |

**Start Date** 06/25/2025
**End Date**

**Judge** **US Attorney** **Defense Attorney**

### Arrest Information

| Date | Agency | Location |
|---|---|---|
| 06/25/2025 | USMS | Sumter County, FL, USA |

### Offense Information

| Code | Description | Disposition | Remark |
|---|---|---|---|
| 5012 | Prob Violation - See Mis | Plead Guilty | Violation of Supervised Release |

### Sentence Information

| Date | Type | Duration | Appeal Date |
|---|---|---|---|
| 12/12/2025 | Imprisonment | 3 years 0 months 0 days | |

## MOVEMENT REQUESTS

| Move ID | Submit Date | Move Start Date | Hold Status |
|---|---|---|---|
| TRANSPORTATION-2569280 | 03/02/2026 | | |

## FACILITY DATA

| Custody Office | Facility Name | Admit Date | Release Date | Total Days |
|---|---|---|---|---|
| ORLANDO | FDC MIAMI | 03/05/2026 | | 1 |
| ORLANDO | JOHN E. POLK CORRECTIONAL FACILITY | 03/03/2026 | 03/05/2026 | 2 |
| ORLANDO | ORANGE COUNTY CORRECTIONAL FACILITY | 12/23/2025 | 03/03/2026 | 70 |
| OCALA | MARION COUNTY JAIL | 06/25/2025 | 12/23/2025 | 181 |
| | | | | **Total Days In Facilities** 254 |

## MEDICAL DATA

This information is the property of the US Marshals Service and Shall Not be Publicly Released or Disseminated Without US Marshals Service Authority.
UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

**Medical Conditions**

No Medical Conditions On Record

**TB Assessments**

| Status | Date Read | TB Expiration | Type | Cleared |
|---|---|---|---|---|
| Current | 07/10/2025 | 07/10/2026 | PPD | Yes |

**Immunizations**

No Immunizations On Record

**Medical Costs**

| Service Date | Vendor | Description | Cost | Voucher |
|---|---|---|---|---|
| 01/27/2018 | BRIGHAM AND WOMENS PHYSICIANS | 71045-26 | $10.05 | |
| 01/28/2018 | GRIGHAM AND WOMENS PHYSICIANS | 71045-26-76 | $10.05 | |
| 01/24/2018 | BRIGHAM AND WOMENS PHYSICIANS | 71046-26 | $11.96 | |
| 01/26/2018 | BRIGHAM AND WOMENS PHYSICIANS | 71045-26 | $10.05 | |
| 01/26/2018 | BRIGHAM AND WOMENS PHYSICIANS | 71045-26076 | $10.05 | |
| 03/06/2018 | BRIGHAM WOMEN HOSPITAL | 93010 | $9.25 | |
| 03/06/2018 | BRIGHAM AND WOMEN HOSPITAL | 71046, 93005 | $73.48 | |
| 03/06/2018 | BRIGHAM AND WOMEN PHYSICIANS | 71046-26 | $11.96 | |
| 01/26/2018 | BRIGHAM AND WOMEN PHYSICIANS | 93010, 93010-77 (1/26-27/18) | $18.50 | |
| 01/29/2018 | BRIGHAM AND WOMEN PHYSICIANS | 99253 | $125.42 | |
| 01/24/2018 | ACCESS AMBULANCE SERVICE | A0434-HH, A0425-HH, 93041-HH | $1,161.70 | |
| 01/26/2018 | BRIGHAN AND WOMEN HOSPITAL | 93010 | $9.25 | |
| 01/25/2018 | BRIGHAN AND WOMEN HOSPITAL | 93010 | $9.25 | |
| 01/24/2018 | BRIGHAN AND WOMEN HOSPITAL | 93010 | $9.25 | |
| 01/25/2018 | BRIGHAN AND WOMEN HOSPITAL | 93306-26 | $80.19 | |
| 01/27/2018 | BRIGHAN AND WOMEN HOSPITAL | (1/27-28/18) 99291,99291 | $484.26 | |
| 02/06/2018 | BRIGHAN AND WOMEN HOSPITAL | ICU/MED, INTERMEDIATE ICU, PHARMACY, SUPPLY IMPLANTS, LABOTORY X-RAY, ANESTHESIA, EKG-ECG, CADIOLOGY | $39,583.49 | CORRECTION BATCH 14 INVOICE $1,186.28 ADDED |
| 01/10/2018 | MEMORIAL HOSPITAL | 78452, A9500, 93017 | $1,306.95 | |
| 01/23/2018 | BRIGHAN AND WOMEN HOSPITAL | 93010 | $9.25 | |
| 01/30/2018 | BRIGHAN AND WOMEN HOSPITAL | 99232 | $79.70 | |
| 01/31/2018 | BRIGHAN AND WOMEN HOSPITAL | 99232 | $79.70 | |
| 01/29/2018 | BRIGHAN AND WOMEN HOSPITAL | 71046-26 | $11.96 | |
| 01/26/2018 | BRIGHAN AND WOMEN HOSPITAL | 33534, 35600, 33517, 33508 | $2,961.38 | |
| 02/07/2018 | AFFINITY PHYSICIANS | 99213 | $53.88 | |
| 02/07/2018 | AFFINITY PHYSICIANS | 93010 | $8.90 | |
| 01/24/2018 | KENT COUNTY MEMORIAL | PHARMACY, IV SOLUTION, A4649, C1769, C1760, 85025, 85610, 99152, 99153, 93458, J1644, J1644, J2250, J3010, Q9967, Q9967 | $3,057.54 | |
| 01/10/2018 | AFFNITY PHYSICIANS | 78452-26, 93018 | $99.19 | |
| 12/12/2017 | AFFINITY PHYSICIANS | 99203 | $79.62 | |
| 01/24/2018 | AFFINITY PHYSICIANS | 93458-26 | $319.91 | |

**Infectious Disease Assessments**

No Infectious Disease Assessments On Record

**DETAILED CAUTIONS**

**Separatees**

No Separatees On Record

**Co-Defendants**

No Co-Defendants On Record

**PRIOR CUSTODY 1**

**PHYSICAL CUSTODY STATUS HISTORY**

| Custody Status | Detention Status | Additional Custody Information | Start Date | End Date |
|---|---|---|---|---|
| In | RL-JPATS | | 03/23/2018 | 03/23/2018 |
| In | WT-MOVE | | 03/21/2018 | 03/23/2018 |
| In | WT-CASE-RESOLVE | | 08/04/2017 | 03/21/2018 |

**COURT CASE**

| Case Number | Case Type | Status | Detention Status | District | Office |
|---|---|---|---|---|---|
| 3:14-CR-01000-RVC | Arrest - Indictment | CASE-RESOLVED | Resolved | D/CT | NEW HAVEN |

**Start Date** 08/04/2017
**End Date** 03/21/2018
**Judge** CHATIGNY, ROBERT N.
**US Attorney** JOHN DURHAM
**Defense Attorney**

**Arrest Information**

| Date | Agency | Location |
|---|---|---|
| 08/03/2017 | USMS | |

**Offense Information**

| Code | Description | Disposition | Remark |
|---|---|---|---|
| 2699 | Fraud | Unknown | SERVING A 12YR SENTENCE ON BANK FRAUD |

**Sentence Information**

No Sentence Information On Record

**FACILITY DATA**

| Custody Office | Facility Name | Admit Date | Release Date | Total Days |
|---|---|---|---|---|
| NEW HAVEN | DONALD W WYATT DETENTION FACILITY | 01/31/2018 | 03/23/2018 | 51 |
| NEW HAVEN | MEDICAL | 01/24/2018 | 01/31/2018 | 7 |
| NEW HAVEN | DONALD W WYATT DETENTION FACILITY | 08/03/2017 | 01/24/2018 | 174 |

**Total Days In Facilities**
232

**PRIOR CUSTODY 2**

**PHYSICAL CUSTODY STATUS HISTORY**

| Custody Status | Detention Status | Additional Custody Information | Start Date | End Date |
|---|---|---|---|---|
| In | RL-BOP | | 08/01/2017 | 08/01/2017 |
| In | RC-TRANSFER | | 07/26/2017 | 08/01/2017 |

**COURT CASE**

| Case Number | Case Type | Status | Detention Status | District | Office |
|---|---|---|---|---|---|
| | Unknown - Legacy | RL-BOP | Unknown | JPATS | JPATS |

**Start Date**
**End Date** 07/20/2019
**Judge**
**US Attorney**
**Defense Attorney**

**Arrest Information**

No Arrest Information On Record

**Offense Information**

No Offense Information On Record

**Sentence Information**

No Sentence Information On Record

**FACILITY DATA**

| Custody Office | Facility Name | Admit Date | Release Date | Total Days |
|---|---|---|---|---|
| JPATS | GRADY COUNTY JAIL | 07/26/2017 | 08/01/2017 | 6 |

**Total Days In Facilities**
6

**PRIOR CUSTODY 3**

U.S. Department of Justice
United States Marshals Service

**USM 129 Individual Custody/Detention Report**
Printed on: 03/06/2026

**PHYSICAL CUSTODY STATUS HISTORY**

| Custody Status | Detention Status | Additional Custody Information | Start Date | End Date |
|---|---|---|---|---|
| In | RL-BOP | | 01/29/2014 | 01/29/2014 |
| In | WT-V/S | | 12/27/2013 | 01/29/2014 |
| In | WT-DESIG | | 12/18/2013 | 12/27/2013 |
| Out | RL-BOND | | 03/18/2011 | 12/18/2013 |
| In | WT-CASE-RESOLVE | | 12/09/2010 | 03/18/2011 |
| In | RC-TRANSFER | | 12/09/2010 | 12/09/2010 |
| In | TRANSFERRED | | 11/30/2010 | 12/09/2010 |
| In | WT-TRANSFER | | 11/17/2010 | 11/30/2010 |
| In | WT-CASE-RESOLVE | | 11/05/2010 | 11/17/2010 |

**COURT CASE**

| Case Number | Case Type | Status | Detention Status | District | Office |
|---|---|---|---|---|---|
| 10-C1-00001 | Arrest - Indictment | CASE-RESOLVED | Resolved | D/CT | NEW HAVEN |

**Start Date**
11/05/2010

**End Date**
12/18/2013

**Judge**
JOHNSON, LINNEA

**US Attorney**
JOHN MCMILLAN

**Defense Attorney**

**Arrest Information**

| Date | Agency | Location |
|---|---|---|
| 11/05/2010 | FBI | WELLINGTON, FL, |

**Offense Information**

| Code | Description | Disposition | Remark |
|---|---|---|---|
| 2608 | Fraud By Wire | Guilty | 18 USC 1343 WIRE FRAUD |

**Sentence Information**

| Date | Type | Duration | Appeal Date |
|---|---|---|---|
| 12/18/2013 | Imprisonment | 0 years 144 months 0 days | |

**FACILITY DATA**

| Custody Office | Facility Name | Admit Date | Release Date | Total Days |
|---|---|---|---|---|
| NEW HAVEN | DONALD W WYATT DETENTION FACILITY | 12/09/2010 | 03/18/2011 | 99 |
| WEST PALM BEACH | FDC MIAMI | 11/17/2010 | 11/30/2010 | 13 |
| WEST PALM BEACH | PALM BEACH COUNTY MAIN DETENTION CENTER | 11/05/2010 | 11/17/2010 | 12 |

**Total Days In Facilities**
124

**RESTRICTIVE HOUSING**

No Restrictive Housing entries On Record

This information is the property of the US Marshals Service and Shall Not be Publicly Released or Disseminated Without US Marshals Service Authority.
UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE

# Attachment F

DARRELLE WINBUSH Digitally signed by DARRELLE WINBUSH Date: 2020.05.13 06:40:06 -05'00'
Order verified via Pacer

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| v. | : | CASE NO. 3:10-cr-222 (RNC) |
| | : | |
| ROBERT RIVERNIDER | : | |
| | : | |
| Defendant. | : | |

ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

Defendant Robert Rivernider has moved for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). In 2013, Mr. Rivernider was sentenced to 144 months' imprisonment following his plea of guilty to numerous counts of wire fraud and conspiracy to commit wire fraud. For reasons that follow, the motion for compassionate release is granted.

The Court finds that the risk posed to Mr. Rivernider's health by the novel coronavirus constitutes an extraordinary and compelling reason justifying compassionate release in accordance with § 3582(c)(1)(A). Mr. Rivernider is 54 years of age with diabetes, heart disease and hypertension, all significant risk factors for severe illness were he to contract COVID-19. See United States v. Brown, 4:05-CR-227-1, 2020 WL 2091802, at *9 (S.D. Iowa April 29, 2020)(citing decisions granting compassionate release because of risk factors linked to COVID-19).

Case 3:10-cr-00222-RNC Document 783 Filed 05/12/20 Page 2 of 4

The Court further finds that the sentencing factors in 18 U.S.C. § 3553(a) weigh in favor of compassionate release at this time. The 144-month sentence imposed in this case was unusually long for an individual like Mr. Rivernider, a non-violent, first-time offender with strong family ties. The advisory Guidelines range, which suggested an even longer sentence, was driven in large part by losses stemming from fraudulent loan applications submitted to mortgage lenders in 2006-07. Mr. Rivernider has served over 50% of the sentence (65% with credit for good time) with no disciplinary issues.

Mr. Rivernider's incarceration has been particularly difficult for him because of his medical condition. While incarcerated, he has undergone triple bypass surgery. In addition, his incarceration has been especially difficult for him because of his strong family ties. While incarcerated, he has been separated from his two young children (who depended on him for support prior to his incarceration). In addition, his mother has passed away and, as a result, his elderly father has been left alone.

Mr. Rivernider's risk for recidivism is low. He is subject to a five-year term of supervised release with numerous conditions. He plans to reside with his father in his father's home. He is able to earn an honest living. He has no known

issues relating to substance abuse. His need for medical care and treatment can be best addressed in the community.

Accordingly, it is hereby ordered:

1. The motion for compassionate release is granted.

2. Mr. Rivernider will be released from the custody of the Bureau of Prisons, as soon as reasonably possible, subject to the following: prior to his release, and as soon as reasonably possible, Mr. Rivernider will be tested by BOP for COVID-19; if he tests negative, he will be released forthwith from BOP custody; if he tests positive, he will be placed in quarantine and provided with medical treatment until he is able to be safely released to his family.

3. Mr. Rivernider will spend the first six months of his supervised release on home confinement as a substitute for incarceration. He will be subject to monitoring using SmartLink technology or the equivalent. He will remain in his home except that he may leave to obtain medical care and treatment, seek and maintain employment, participate in religious services, perform community service, and at such other times as may be approved by the U.S. Probation Office.

4. All the terms of the Judgment, ECF No. 583, remain in effect.

So ordered this 12th day of May 2020.

/s/ RNC
Robert N. Chatigny
United States District Judge

I hereby attest and certify that this is a copy of a document which was electronically filed with the United States District Court for the District of Connecticut

Date Filed: 5/12/2020

Robin D. Tabora, Clerk

By: /s/ Michael Bozek
Deputy Clerk

# Attachment G

05-13-2020
Second Order received from General Counsel and verified via PACER.
RACHEL HERNANDEZ
Digitally signed by RACHEL HERNANDEZ
Date: 2020.05.13 18:03:50 -05'00'

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | |
| v. | : | CASE NO. 3:10-cr-222 (RNC) |
| | : | |
| ROBERT RIVERNIDER | : | |
| | : | |
| Defendant. | : | |

SECOND ORDER REGARDING COMPASSIONATE RELEASE

Yesterday, an order entered granting Mr. Rivernider's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) (hereinafter "the Order"). The Order conditioned Mr. Rivernider's immediate release from the custody of the Bureau of Prisons on a requirement that he be tested by BOP for COVID-19. The Court anticipated that the testing process could be completed in about one day. However, the Government has reported that the testing process may take 5-7 days to be completed. In requiring that Mr. Rivernider be tested prior to his release, the Court did not intend to delay his release for that period of time.

Accordingly, the Order is hereby modified as follows:

The requirement that Mr. Rivernider be tested by the BOP prior to his release is eliminated.

Mr. Rivernider's sentence of imprisonment is reduced to time-served and he will be released forthwith.

Mr. Rivernider will self-quarantine at his father's residence for a period of fourteen days.

During the 14-day period of self-quarantine, Mr. Rivernider will endeavor to make arrangements to be tested for COVID-19. If he tests positive, he will notify the BOP.

All other terms of the Order remain in effect.

So ordered this 13th day of May 2020.

/s/ RNC
Robert N. Chatigny
United States District Judge

# Attachment H

| **TRANSFER OF JURISDICTION** | DOCKET NUMBER (*Tran. Court*)<br>0205 3:10CR00222-001<br><br>DOCKET NUMBER (*Rec. Court*)<br>5:24-cr-138-TPB-PRL | | |
|---|---|---|---|
| NAME AND ADDRESS OF PROBATIONER/SUPERVISED RELEASEE<br><br>Robert Rivernider<br>Wellington, FL 33411 | DISTRICT<br>CONNECTICUT | DIVISION<br>HARTFORD | |
| | NAME OF SENTENCING JUDGE<br>Honorable Robert N. Chatigny, U.S. District Judge | | |
| | DATES OF PROBATION/<br>SUPERVISED RELEASE: | FROM<br>05/14/2020 | TO<br>05/13/2025 |

OFFENSE
FRAUD BY WIRE - RADIO - OR TELEVISION

JUSTIFICATION/REASON FOR TRANSFER (e.g., prosocial ties, employment/education opportunities, violation of supervision)
Mr. Rivernider has established himself in Middle District of Florida. He has no ties to Connecticut and no plans of returning to Connecticut.

**PART 1 - ORDER TRANSFERRING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

IT IS HEREBY ORDERED that pursuant to 18 U.S.C. § 3605, the jurisdiction of the probationer or supervised releasee named above be transferred with the records of the Court to the United States District Court for the Middle District of Florida upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this court.*

March 28, 2024
*Date*

Robert N Chatigny Digitally signed by Robert N Chatigny Date: 2024.03.28 10:39:56 -04'00'
*United States District Judge*

*This sentence may be deleted in the discretion of the transferring Court.

**PART 2 -ORDER ACCEPTING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA

IT IS HEREBY ORDERED that jurisdiction over the above-named probationer/supervised releasee be accepted and assumed by this Court from and after the entry of this order.

*Effective Date*

*United States District Judge*

# Attachment I

MD/FL 12C
(04/17)

# United States District Court

**for**

**Middle District of Florida**
**Ocala Division**

**Superseding Petition for Offender Under Supervised Release**

Name of Offender: Robert Rivernider | Docket Number: 5:24-cr-138-TPB-PRL

Name of Sentencing Judicial Officer: Honorable Robert N. Chatigny,
United States District Judge

Date of Original Sentence: December 18, 2013

Original Offense: Counts 1 and 9: Conspiracy to Commit Wire Fraud, Counts 2-8: Wire Fraud and Counts 10-18: Wire Fraud

Original Sentence: One-hundred forty-four (144) months imprisonment to be followed by three (3) years of supervised release in Counts 1, 2 through 8, and 10 through 13 and five (5) years of supervised release in Counts 9 and 14 through 18. In addition to the standard conditions of supervision, the following special conditions were imposed by the Court: no new debt, financial disclosure, mental health treatment, one hundred twenty (120) community service hours, and to avoid all contact with victims in this case. A $1,800.00 special assessment fee was ordered. Restitution in the amount of $22,140,765.99 was also ordered.

On May 12, 2020, Mr. Rivernider was granted a compassionate release due to the COVID-19 outbreak and ordered released from incarceration as soon as reasonably possible. In lieu of imprisonment, he was ordered to home confinement for the first six (6) months of supervised release.

On September 9, 2021, the District of Connecticut Probation Office was notified of multiple instances of noncompliance, no action was ordered on September 22, 2022.

On November 4, 2022, the District of Connecticut was again advised of Mr. Rivernider's failure to maintain payments as ordered. On August 1, 2023, he was found guilty of the violations and reinstated to supervision.

On October 6, 2023, the District of Connecticut Probation Office was advised of new law violations committed by Mr. Rivernider. No action was granted by the Court on October 13, 2023.

Type of Supervision: Supervised Release

Date Supervision Commenced: May 14, 2020 | Date Supervision Expires: September 18, 2025

Assistant United States Attorney: William Hamilton | Defense Attorney: To Be Determined

Jurisdiction was transferred to the Honorable Thomas P. Barber

---

**PETITIONING THE COURT TO SUPERSEDE THE PETITION FILED ON JANUARY 14, 2025**

Offender: Robert Rivernider
Docket: 5:24-cr-138-TPB-PRL
Date Prepared: August 13, 2025

---

The probation officer believes that the offender has violated the following condition(s) of supervision:

1. **Failure to Report in violation of Condition 2 of the Standard Conditions of Supervision:** On November 4, 2024, the defendant failed to report to the United States Probation Office as instructed by his probation officer via letter on October 31, 2024.

2. **Failure to make restitution in violation of the court's order, which requires him to make payments as follows:** Between May 1, 2024, and November 4, 2024, the defendant failed to make restitution payments according to the payment schedule ordered by the court on August 1, 2023.

3. **Failure to Disclose Financial Information in violation of the Special Condition:** On October 30, 2024, the defendant failed to provide financial information requested by the Probation Officer. Specifically, he failed to provide the probation officer a copy of his bank statements.

4. **Obtained New Credit/Loan without Approval in violation of the Special Condition:** On December 30, 2024, the defendant obtained an auto loan with Hyundai Motor Finance without securing the permission of the Probation Officer.

United States Probation Office Recommendation:

☒ The Petition filed on January 14, 2025, be superseded.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on August 13, 2025

/s/ Erik Padilla

Erik Padilla
United States Probation Officer

Offender: Robert Rivernider
Docket: 5:24-cr-138-TPB-PRL
Date Prepared: August 13, 2025

THE COURT ORDERS

☒ The Petition filed on January 14, 2025, be superseded

☐ No Action

☐ Other

Signature of Judicial Officer

08/13/2025

Date

**JUDGE'S COMMENTS**

Number of Inmate Records Returned: 1




Enlarge Photo

| RIVERNIDER, ROBERT HENRY (W/ MALE / DOB: 8/26/1965 ) | | | |
|---|---|---|---|
| Status: | Released | | |
| Booking No: | SCSO25JBN001842 | MniNo: | SCSO21MNI021095 |
| Booking Date: | 06/24/2025 03:01 PM | Released: | 06/25/2025 09:58 AM |
| Age On Booking Date: | 59 | | |
| Bond Amount: | $0.00 | | |
| CELL Assigned: | | | |
| Address Given: | LEESBURG, FL | | |

**CHARGES**

| | STATUTE | COURT CASE NUMBER | CHARGE | DEGREE | LEVEL | BOND |
|---|---|---|---|---|---|---|
| [+] | 941.02 | | OUT-OF-STATE-FUG | N | | NO BOND |

# Attachment J

Case 5:24-cr-00138-TPB-PRL Document 18 Filed 06/25/25 Page 1 of 1 PageID 3633

FILED - USDC - FLMD - OCA
JUN 25 2025 PM3:06

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

United States of America
v.

Robert Rivernider
*Defendant*

Case No. 5:24-cr-138-TPB-PRL

## ARREST WARRANT

To: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)* Robert Rivernider,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☐ Complaint
☐ Probation Violation Petition ☒ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

See attached Petition.

Date: 01/14/2025

K. Jovino
*Issuing officer's signature*

City and state: Ocala, Florida

Elizabeth M. Warren
*Printed name and title*

UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA

**Return**

This warrant was received on *(date)* 1/14/25, and the person was arrested on *(date)* 6/25/25
at *(city and state)* Sumter County, FL.

Date: 6/25/25

[signature]
*Arresting officer's signature*

T. Ellis, DUSM
*Printed name and title*

# Attachment K

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**UNITED STATES OF AMERICA**

**vs**

**Case Number: 5:24-cr-138-TPB-PRL**

**ROBERT RIVERNIDER**

**USM Number: 96006-004**

**Joshua Woodard, FPD**
**201 S. Orange Avenue**
**Suite 300**
**Orlando, FL 32801**

## JUDGMENT IN A CRIMINAL CASE
## For Revocation of Supervised Release

The defendant was found guilty of violation of charge numbers: One, Three, and Four of the term of Supervised Release. The defendant is adjudicated guilty to these violation charge numbers:

| Violation Charge Number | Nature of Violation | Violation Ended |
|---|---|---|
| One | Failure to report | November 4, 2024 |
| Three | Failure to disclose financial information | October 30, 2024 |
| Four | Obtain Nex Credit/Loan without Approval | December 30, 2024 |

The defendant is sentenced as provided in the following pages of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

**IT IS ORDERED** that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant shall notify the court and United States attorney of any material change in the defendant's economic circumstances.

Date of Imposition of Sentence:

December 12, 2025

THOMAS P. BARBER
UNITED STATES DISTRICT JUDGE

DECEMBER 12th, 2025

**Robert Rivernider**
**5:24-cr-138-TPB-PRL**

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of **3 Years.**

Defendant shall cooperate in the collection of DNA.

It is FURTHER ORDERED that upon release from imprisonment, Defendant is released from further supervision by the court.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

____________________________________________________________

____________________________________________________________

____________________________________________________________

____________________________________________________________

Defendant delivered on ____________________ to ______________________________________

at ________________________________________________, with a certified copy of this judgment.

____________________________________________
UNITED STATES MARSHAL

By: ________________________________________________
Deputy U.S. Marshal

# Attachment L

A prisoner, with a term of supervised release to follow, who has a fine or restitution shall be released in accordance with the instructions contained in Chapter I, paragraph o.

**(4) Revocation of a term of supervised release.** The court, in imposing a period of supervised release, sets the conditions (**18 U.S.C. § 3583(d)**) that the prisoner must observe while under supervision, and, if the prisoner fails to abide by those conditions, then the court may, under **18 U.S.C. § 3583(e)**

> **(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a person whose term is revoked under this paragraph may not be required to serve more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case; or**

As noted above, the court, upon revocation of a term of supervised release may impose a term of imprisonment. In addition to the term of imprisonment, the court may also impose another period of supervised release to follow as authorized under **18 U.S.C. § 3583(h)** which states,

> **(h) Supervised release following revocation.--When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by the statute for the offense that resulted in**

**the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.**

**18 U.S.C. § 3583(h)** became effective on September 13, 1994 as a result of the VCCLEA. As noted, a new period of supervised release may be imposed upon revocation of the current term of supervised release, regardless of the date of offense, provided the criteria as set forth in **§ 3583(h)** is met. Contrary to the Bureau's interpretation of this provision, some circuit and district courts have held that **§ 3583(h)** applies only to offenses that occur on or after the effective date of the act. It is not necessary, however, for ISM staff to monitor the appropriateness of a supervised release term imposed in connection with a revocation term. The Bureau has no authority or responsibility for enforcing a term of supervised release.

A revocation of a term of supervised release cannot begin to run, or commence, any earlier than the date on which it is revoked. A supervised release revocation term, for calculation purposes, shall be treated the same as any other NL sentence and may be aggregated with other NL sentences following the same aggregation policy as discussed in Chapter I, paragraphs l. and m., of this Manual.

Any prior custody time spent in official detention after the date of offense that was not awarded to the original sentence or elsewhere shall be awarded to the revocation term. (See Chapter I, 3.c. for detailed prior custody time determination information.)

It is possible that an inmate about to be released may be finishing a combination of sentences such as SRA, VCCLEA violent and non-violent and PLRA, each with its own period of supervised release to follow. It is also possible that a prisoner about to be released may be finishing a combination of sentences with supervised release attached to one or several, but not all, of the sentences just completed.

If there is more than one period of supervised release to follow, supervision in the community is consolidated and if the supervised release is revoked it is revoked for all sentences involved, ordinarily making it impossible to tie the revocation term to one of the sentences from which released. If the court specifies the sentence or count to which the revocation term applies, then the revocation term shall be treated in accordance with the same sentencing provision as the sentence from which released.

# Attachment M

```
  BECA7          *              PUBLIC INFORMATION              *      09-08-2026
PAGE 001 OF 001 *                 INMATE DATA                   *      10:55:24
                                AS OF 09-08-2026

REGNO..: 96006-004 NAME: RIVERNIDER, ROBERT

                   RESP OF: BEC
                   PHONE: 304-252-9758      FAX: 304-256-4956
                                            RACE/SEX...: WHITE / MALE
                                            AGE:  61
PROJ REL MT: GOOD CONDUCT TIME RELEASE      PAR ELIG DT: N/A
PROJ REL DT: 01-13-2028                     PAR HEAR DT:
```

G0005    TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

```
  BECA7          *              PUBLIC INFORMATION              *       09-08-2026
PAGE 001 OF 003 *                  INMATE DATA                  *       10:55:24
                                 AS OF 09-08-2026


REGNO..: 96006-004 NAME: RIVERNIDER, ROBERT

                   RESP OF: BEC
                   PHONE: 304-252-9758      FAX: 304-256-4956
FSA ELIGIBILITY STATUS IS: INELIGIBLE

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.

HOME DETENTION ELIGIBILITY DATE....: 09-27-2027

THE INMATE IS PROJECTED FOR RELEASE: 01-13-2028 VIA GCT REL

----------------------CURRENT JUDGMENT/WARRANT NO: 020 ------------------------

COURT OF JURISDICTION...........: FLORIDA, MIDDLE DISTRICT
DOCKET NUMBER...................: 5:24-CR-138-TPB-PRL
JUDGE...........................: BARBER
DATE SENTENCED/PROBATION IMPOSED: 12-18-2013
DATE SUPERVISION REVOKED........: 12-12-2025
TYPE OF SUPERVISION REVOKED.....: REG
DATE COMMITTED..................: 04-15-2026
HOW COMMITTED...................: COMMIT OF SUPERVISED REL VIOL
PROBATION IMPOSED...............: NO

                 FELONY ASSESS  MISDMNR ASSESS  FINES          COSTS
NON-COMMITTED.:  $1,800.00      $00.00          $00.00         $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO        AMOUNT:  $00.00

-------------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....:  820     COMMUNICATIONS ACT

OFF/CHG: 18:1349 CONSPIRACY TO COMMIT WIRE FRAUD, CT 1 & 9
         18:1343 WIRE FRAUD, CT.S 2-8 & CT'S 10-18

 SENTENCE PROCEDURE.............: SUPERVISED RELEASE VIOLATION PLRA
 SENTENCE IMPOSED/TIME TO SERVE.:     3 YEARS
 DATE OF OFFENSE................: 04-01-2008

-------------------------CURRENT COMPUTATION NO: 020 --------------------------

COMPUTATION 020 WAS LAST UPDATED ON 05-15-2026 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 05-15-2026 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 020: 020 010

DATE COMPUTATION BEGAN..........: 12-12-2025
TOTAL TERM IN EFFECT............:     3 YEARS
TOTAL TERM IN EFFECT CONVERTED..:     3 YEARS
EARLIEST DATE OF OFFENSE........: 04-01-2008

JAIL CREDIT.....................:   FROM DATE     THRU DATE
                                    06-24-2025    12-11-2025

TOTAL PRIOR CREDIT TIME.........: 171
TOTAL INOPERATIVE TIME..........: 0



  G0002      MORE PAGES TO FOLLOW . . .
```

REGNO..: 96006-004 NAME: RIVERNIDER, ROBERT

RESP OF: BEC
PHONE: 304-252-9758 FAX: 304-256-4956
TOTAL GCT EARNED AND PROJECTED..: 162
TOTAL GCT EARNED................: 54
STATUTORY RELEASE DATE PROJECTED: 01-13-2028
ELDERLY OFFENDER TWO THIRDS DATE: 06-24-2027
EXPIRATION FULL TERM DATE.......: 06-23-2028
TIME SERVED.....................: 1 YEARS 2 MONTHS 16 DAYS
PERCENTAGE OF FULL TERM SERVED..: 40.3
PERCENT OF STATUTORY TERM SERVED: 47.3

PROJECTED SATISFACTION DATE.....: 01-13-2028
PROJECTED SATISFACTION METHOD...: GCT REL

------------------------PRIOR JUDGMENT/WARRANT NO: 010 ------------------------

COURT OF JURISDICTION...........: CONNECTICUT
DOCKET NUMBER...................: 3:10CR222(RNC)
JUDGE...........................: CHATIGNY
DATE SENTENCED/PROBATION IMPOSED: 12-18-2013
DATE COMMITTED..................: 01-29-2014
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

| | FELONY ASSESS | MISDMNR ASSESS | FINES | COSTS |
|---|---|---|---|---|
| NON-COMMITTED.: | $1,800.00 | $00.00 | $00.00 | $00.00 |

RESTITUTION...: PROPERTY: NO SERVICES: NO AMOUNT: $00.00

---------------------------PRIOR OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....: 158 18:1030 FRAUD COMPUTERS

OFF/CHG: 18:1349 CONSPIRACY TO COMMIT WIRE FRAUD, CT 1 & 9
18:1343 WIRE FRAUD, CT.S 2-8 & CT'S 10-18

SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.: 144 MONTHS
TERM OF SUPERVISION............: 5 YEARS
DATE OF OFFENSE................: 04-01-2008

---------------------------PRIOR COMPUTATION NO: 010 --------------------------

COMPUTATION 010 WAS LAST UPDATED ON 02-05-2020 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 02-04-2014 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010: 010 010

DATE COMPUTATION BEGAN..........: 01-29-2014
TOTAL TERM IN EFFECT............: 144 MONTHS
TOTAL TERM IN EFFECT CONVERTED..: 12 YEARS
EARLIEST DATE OF OFFENSE........: 04-01-2008

JAIL CREDIT.....................: FROM DATE THRU DATE

```
  BECA7         *             PUBLIC INFORMATION              *      09-08-2026
PAGE 003 OF 003 *                INMATE DATA                  *      10:55:24
                              AS OF 09-08-2026

REGNO..: 96006-004 NAME: RIVERNIDER, ROBERT

                   RESP OF: BEC
                   PHONE: 304-252-9758      FAX: 304-256-4956
                                    11-05-2010    03-18-2011

TOTAL PRIOR CREDIT TIME.........: 134
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 648
TOTAL GCT EARNED................: 324
STATUTORY RELEASE DATE PROJECTED: 12-08-2023
ELDERLY OFFENDER TWO THIRDS DATE: 09-17-2021
EXPIRATION FULL TERM DATE.......: 09-16-2025
TIME SERVED.....................:     6 YEARS      7 MONTHS     28 DAYS
PERCENTAGE OF FULL TERM SERVED..:  55.4
PERCENT OF STATUTORY TERM SERVED:  65.1

ACTUAL SATISFACTION DATE........: 05-14-2020
ACTUAL SATISFACTION METHOD......: CMPSNT REL
ACTUAL SATISFACTION FACILITY....: EST
ACTUAL SATISFACTION KEYED BY....: JLD

DAYS REMAINING..................: 1951
FINAL PUBLIC LAW DAYS...........: 0
```

G0005    TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED